[No. E048416. Fourth Dist., Div. Two. June 23, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
CESAR GARCIA, Defendant and Appellant.

## COUNSEL

John J. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Charles Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—Defendant Cesar Garcia appeals from a judgment entered following a no contest plea to a single count of felony false

imprisonment by force (Pen. Code, § 236[1]). In exchange for the plea, the court dismissed a rape charge (count 1) and another separate case (No. FVI801212). Defendant was sentenced to three years' felony probation, with the offense reduced to a misdemeanor after one year if defendant did not violate probation. The trial court also ordered defendant to pay $5,264.71 in victim restitution as a condition of probation.

Defendant contends the trial court abused its discretion in ordering him to pay as restitution the victim's counseling costs of $4,764.71, plus an additional $500, which the victim's therapist charged the victim for appearing at the restitution hearing pursuant to defendant's subpoena. Defendant asserts there was insufficient evidence supporting the restitution order. Defendant also contends the trial court erred in excluding testimony by the victim's therapist and in failing to enforce defendant's subpoena of the victim's therapy records based on the psychotherapist-patient privilege (Evid. Code, § 1014).

We conclude there was no reversible error and affirm the judgment.

### 1. Facts

On May 6, 2007, the day after Jane Doe broke up with defendant, Doe took Vicodin for a hand injury, drank some alcohol, and fell asleep on her couch. Even though defendant did not live with Doe and did not have a key to her home, he entered Doe's home through an unlocked door and had sex with her while she was asleep on the couch. Doe awoke when she heard the sound of defendant's cell phone camera. Defendant had his penis inside Doe's vagina. Doe pushed defendant off her, grabbed defendant's phone, ran into the bathroom, and locked the door. Defendant left Doe's home. Doe found on the cell phone a picture of defendant having sex with Doe. Doe called the police and reported that defendant had had sex with her while she was sleeping, without her consent.

Defendant was arrested and interviewed the following morning. Defendant told Sheriff's Detective Goodell that he was aware Doe was taking medication. He had been exchanging text messages with Doe shortly before the charged crime. Defendant went to her house. The front door was unlocked. He let himself in and found Doe sleeping on the couch. Defendant admitted having intercourse with her while she was sleeping. He also conceded taking a picture with his phone camera of himself having sex with Doe. Defendant left after Doe heard the sound of defendant's phone camera, woke up, and told defendant she was calling the police. Defendant admitted he had used poor judgment.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

## 2. Psychotherapist-patient Privilege

Defendant contends the trial court abused its discretion in excluding under the psychotherapist-patient privilege (Evid. Code, § 1014) testimony by Doe's therapist, Dr. Covington, regarding the content of her discussions with Doe during therapy.

Pursuant to section 1202.4, subdivision (f), Doe requested recovery of the cost of psychotherapy provided by Dr. Covington. Section 1202.4, subdivision (f) provides that when a crime victim has suffered economic loss as a result of the defendant's conduct, "the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (C) Mental health counseling expenses." (§ 1202.4, subd. (f).) Subdivision (g) of section 1202.4 further states that "The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record."

■ The word "loss," within the meaning of section 1202.4, " ' " 'must be construed broadly and liberally to uphold the voters' intent.' [Citation.] Because the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." [Citation.]' [Citation.] 'The only limitation the Legislature placed on victim restitution is that the loss must be an "economic loss incurred as the result of the defendant's criminal conduct." [Citations.]' [Citation.]" (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1232 [99 Cal.Rptr.3d 555] (*Moore*).)

" 'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " [Citations.]' [Citation.]" (*Moore, supra*, 177 Cal.App.4th at p. 1231.)

Giving section 1202.4 the requisite broad and liberal construction, we conclude the trial court did not abuse its discretion in ordering defendant to pay restitution for the cost of Doe's therapy.

## A. *Background Facts*

On November 7, 2008, the trial court granted defendant felony probation pursuant to the terms of defendant's guilty plea and ordered defendant to pay Doe $3,495 in restitution for Dr. Covington's therapy charges. The restitution amount was substantiated by a probation memo, which included Dr. Covington's billing summary. The restitution order was entered without prejudice since defense counsel had not seen the probation memo and sought to contest the amount of the restitution.

Prior to the contested restitution hearing on May 1, 2009, defendant served a subpoena duces tecum on Dr. Covington, requesting Dr. Covington to produce records of Doe's therapy. The prosecutor moved to quash the subpoena duces tecum. The People's motion was heard the day before the restitution hearing. Defense counsel claimed Dr. Covington told him she had not discussed rape with Doe during therapy but had discussed a sex tape Doe made with her boyfriend. The court deferred ruling on the motion to quash until the restitution hearing the next day.

At the restitution hearing on May 1, the trial court vacated its previous restitution order and heard the matter anew for the purpose of determining whether therapy charges were causally related to the charged crimes. The prosecutor provided the court with an updated billing summary of Dr. Covington's therapy charges, which totaled $4,764.71. The prosecutor noted that $3,229.71 had been paid by Doe's insurance carrier, PacifiCare and $1,535 was paid by Doe. Defense counsel objected to the billing summary on the ground Doe was not entitled to recover the entire amount requested in the billing summary.

At the restitution hearing, Doe testified the billing summary reflected Dr. Covington's therapy charges, and all of the charges were based on therapy relating to the charged crimes. On cross-examination, the trial court sustained the prosecutor's objection, based on the psychotherapist-patient privilege, to defense counsel's questions regarding what Doe discussed with Dr. Covington during therapy. When asked if Doe spoke with Dr. Covington about being raped, Doe said she had. The trial court told defense counsel not to inquire further regarding the topic. Doe testified she first met with Dr. Covington after the charged crimes and had not seen any other psychologist or psychiatrist prior to meeting with Dr. Covington. The court sustained the prosecutor's objection, based on the psychotherapist-patient privilege, to defense counsel asking Doe if everything Doe spoke about with Dr. Covington pertained to the rape.

Dr. Covington testified at the restitution hearing that she did not recall telling defense counsel that Doe never told her she had been raped. The trial

court asked Dr. Covington whether she had ever seen Doe prior to May 6, 2007, the date of the charged crimes. Dr. Covington first saw Doe on May 25, 2007. The court asked Dr. Covington if, "[w]ithout revealing any of the substance of what was discussed in any way, was the therapy provided to [Doe] causally related to those allegations?" Dr. Covington said, "Yes."

### B. *The Psychotherapist-patient Privilege and Waiver*

 Evidence Code sections 1010 through 1027 set forth the definitions and rules governing the psychotherapist-patient privilege. The psychotherapist-patient privilege is set forth in Evidence Code section 1014. That section provides in relevant part: "Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by: [¶] (a) The holder of the privilege. [¶] (b) A person who is authorized to claim the privilege by the holder of the privilege. [¶] (c) The person who was the psychotherapist at the time of the confidential communication . . . ." Pursuant to Evidence Code section 1013, the patient is " 'holder of the privilege.' "

As to waiver of the privilege, Evidence Code section 1016 states: "There is no privilege under this article as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by: [¶] (a) The patient . . . ."

Evidence Code section 912 further states regarding waiver: "(a) Except as otherwise provided in this section, the right of any person to claim a privilege provided by . . . [Evidence Code section 1014] (psychotherapist-patient privilege) . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."

### C. *Discussion*

Defendant argues Doe waived the psychotherapist-patient privilege by requesting restitution for the cost of her therapy. We disagree. There was no waiver of the privilege.

Defendant cites *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557] (*Lifschutz*), for the proposition that the trial court erred in

relying on the psychotherapist-patient privilege (Evid. Code, § 1014) in excluding Dr. Covington's testimony regarding the contents of Doe's therapy sessions. In *Lifschutz*, a psychiatrist was held in contempt for refusing to answer deposition questions and produce records relating to treatment of a former patient who was claiming mental and emotional distress damages in a civil lawsuit against a third party defendant. (*Lifschutz, supra*, at p. 420.) Lifschutz asserted the psychotherapist-patient privilege applied. (*Ibid.*) The California Supreme Court concluded Lifschutz's patient waived the privilege by instituting the civil lawsuit. (*Id.* at p. 435.)

■ The court in *Lifschutz* acknowledged that "an environment of confidentiality of treatment is vitally important to the successful operation of psychotherapy. California has embraced this view through the enactment of a broad, protective psychotherapist-patient privilege." (*Lifschutz, supra*, 2 Cal.3d at p. 422.) ■ The *Lifschutz* court nevertheless concluded "the litigant-patient exception to the psychotherapist-patient privilege, at issue in this case, does not unconstitutionally infringe the constitutional rights of privacy of either psychotherapists or psychotherapeutic patients. As we point out, however, because of the potential of invasion of patients' constitutional interests, trial courts should properly and carefully control compelled disclosures in this area in the light of accepted principles." (*Id.* at p. 423.)

■ In *Lifschutz, supra*, 2 Cal.3d 415, the court noted that the patient-litigant exception to the privilege "involves only that special instance in which a patient has chosen to forego the confidentiality of the privilege . . . ." (*Id.* at p. 426.) The *Lifschutz* court concluded the exception applied since the patient, who was the holder of the privilege, placed his mental condition at issue by suing for mental and emotional distress and by disclosing at a deposition that he had consulted Lifschutz for psychiatric treatment. He thus "waived whatever privilege he might have had to keep such information confidential." (*Id.* at p. 430.) The *Lifschutz* court stated it was "mindful of the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor" (*id.* at p. 431) and noted that waiver of the privilege thus did not require unlimited disclosure: "[T]he patient-litigant exception allows only a limited inquiry into the confidences of the psychotherapist-patient relationship, compelling disclosure of only those matters directly relevant to the nature of the specific 'emotional or mental' condition which the patient has voluntarily disclosed and tendered in his pleadings or in answer to discovery inquiries. Furthermore, even when confidential information falls within this exception, trial courts, because of the intimate and potentially embarrassing nature of such communications, may utilize the protective measures at their disposal to avoid unwarranted intrusions into the confidences of the relationship." (*Ibid.*)

■ In the instant case, Doe did not put her emotional or mental condition at issue by seeking in a civil action damages for mental or emotional distress. Rather, in a criminal proceeding, she informed the court of her monetary losses caused by defendant's crimes. This was for the purpose of facilitating the court's statutory mandate to order defendant to pay full restitution for his crimes. Unlike in *Lifschutz, supra*, 2 Cal.3d 415, Doe's own action did not initiate the exposure. Doe merely was a crime victim and the trial court was required to order defendant to pay her for all of her losses arising from defendant's crimes.

Requiring a victim of a sexual assault or rape, such as Doe, to disclose the details of her communications with her therapist when requesting restitution for therapy costs would tend to deter victims from requesting restitution for the cost of therapy: " ' "It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world from a witness stand." ' " (*Lifschutz, supra*, 2 Cal.3d at p. 431.) As the *Lifschutz* court noted, when questioning the psychotherapist or patient as to confidential communications at trial, the danger of publicity and embarrassment increases. (*Id.* at p. 437.) The crime victim no doubt has already suffered the humiliation and trauma of being victimized by the defendant.

■ Furthermore, disclosure of Doe's communications with Dr. Covington during therapy was not necessary. Unless the information sought is directly relevant and necessary to determining the issue before the court, the communication is privileged and disclosure cannot be compelled. (*Lifschutz, supra*, 2 Cal.3d at p. 438.) The "state interest of facilitating the ascertainment of truth in connection with legal proceedings" relating to restitution required inquiry only into whether Doe's therapy related to or arose from being victimized by defendant. (*Id.* at p. 432.) This determination was accomplished by means of Doe's and Dr. Covington's testimony stating the therapy began shortly after the charged crimes and related to Doe's being victimized by defendant. Dr. Covington further provided a billing summary establishing the cost and dates of the therapy. Prying into the specifics of confidential patient-therapist communications was not necessary for purposes of ordering restitution.

In carrying out the trial court's statutory mandate to order restitution to the victim, the trial court appropriately exercised its discretion in balancing

defendant's need to discern the actual loss sustained by the victim and the victim's interest in avoiding being compelled unnecessarily to disclose personal, confidential matters disclosed during therapy. The trial court reasonably concluded that, for purposes of determining the amount of restitution defendant was obligated to pay, further inquiry into the content of Dr. Covington's and Doe's communications during therapy was unnecessarily invasive.

 Even assuming Doe waived the psychotherapist-patient privilege, such waiver "must be construed not as a complete waiver of the privilege but only as a limited waiver concomitant with the purposes of the exception." (*Lifschutz, supra,* 2 Cal.3d at p. 435.) Under Evidence Code section 1016, disclosure was required only as to necessary information directly related to Doe's restitution claim. (*Lifschutz, supra,* at p. 435.) We conclude the trial court appropriately allowed "only a limited inquiry into the confidences of the psychotherapist-patient relationship, compelling disclosure of only those matters directly relevant" to the issue of restitution for Doe's therapy costs. (*Id.* at p. 431.)

### 3. Enforcement of Defendant's Subpoena Duces Tecum of Doe's Therapy Records

Defendant contends the trial court abused its discretion in failing to compel enforcement of defendant's subpoena duces tecum of Doe's therapy records.

Prior to the contested restitution hearing on May 1, 2009, defendant served a subpoena duces tecum on Dr. Covington, requesting records of Doe's therapy. The prosecutor moved to quash the subpoena duces tecum. The prosecutor's motion was heard the day before the restitution hearing. The court deferred ruling on the motion until the restitution hearing the next day. The prosecutor noted that the whole purpose of bringing the motion to quash prior to the trial was to avoid the necessity and cost of Dr. Covington appearing in court and testifying. The prosecutor asserted restitution could be determined based on Dr. Covington's billing summary memo. The court stated the cost of Dr. Covington appearing in court was not before the court and deferred ruling on the motion until the restitution hearing. The issue of the subpoena duces tecum and motion to quash, however, was not revisited during the restitution hearing on May 1.

Defendant argues his objection to the court's failing to compel enforcement of his subpoena duces tecum was not waived on appeal because the trial court's ruling on the psychotherapist-patient privilege and related limitations would have rendered any such objection to nonproduction of the therapy records futile. We disagree.

While the court made it clear it would not permit questions relating to Dr. Covington's communications with Doe during therapy, it was not necessarily futile for defense counsel to request production of those therapy records that were relevant and did not disclose specific communications subject to the psychotherapist-patient privilege. As to any other records, there was no prejudice in the court's not enforcing the subpoena duces tecum since the records were in all likelihood inadmissible as privileged, irrelevant, or of little probative value. (*People v. Watson* (1956) 46 Cal.2d 818, 835 [299 P.2d 243].)

█ By not requesting, at the restitution hearing, enforcement of the subpoena duces tecum, defendant forfeited his objection on appeal. Generally, an appellant forfeits claims of error through inaction that prevents the trial court from avoiding or curing the error. (*Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1117 [39 Cal.Rptr.2d 535].) This general waiver or forfeiture rule is "grounded on principles of waiver and estoppel, and is a matter of judicial economy and fairness to opposing parties. [Citations.]" (*Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 629–630 [223 Cal.Rptr. 339].) This court will not reverse erroneous rulings that could have been, but were not, challenged below. (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546 [39 Cal.Rptr.2d 432].)

### 4. Restitution of Losses Covered by Insurance

Defendant challenges the restitution order on the ground Doe's health insurance company, PacifiCare, paid a portion of Doe's therapy costs. Defendant argues there thus was insufficient evidence that Doe suffered any economic loss. Under section 1202.4, subdivision (f), the trial court ordered defendant to reimburse Doe for the cost of Doe's therapy, including the charges covered by PacifiCare.

Section 1202.4, subdivision (f) provides that when a crime victim has suffered economic loss as a result of the defendant's conduct, "the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . [¶] . . . [¶] (2) Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party. . . ." (§ 1202.4, subd. (f).)

The word "loss," within the meaning of section 1202.4, " ' " 'must be construed broadly and liberally to uphold the voters' intent.' [Citation.] Because the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." [Citation.]' [Citation.] 'The only limitation the Legislature placed on victim restitution is that the loss must be an "economic loss incurred as the result of the defendant's criminal conduct." [Citations.]' [Citation.]" (*Moore, supra*, 177 Cal.App.4th at p. 1232.)

At defendant's sentencing hearing in November 2008, defense counsel objected to the amount of restitution the trial court stated it intended to order defendant to pay. Defense counsel argued defendant was not required to pay the entire amount because Doe was requesting restitution only for the amount of her insurance copayments she had paid, amounting to $1,100. Defendant was willing to pay this but objected to paying the remainder of the therapy charges paid by PacifiCare.

In response, the trial court stated it was required to order restitution for the entire amount charged based on the probation department memo dated November 5, 2008. Attached to the memo was a copy of Dr. Covington's billing summary, reflecting therapy beginning on May 25, 2007. Also attached was a memo by Doe stating that to date she had paid copayments totaling $1,100. At defendant's request, the court set a contested restitution hearing.

At a subsequent hearing on restitution in January 2009, defense counsel again objected to the court's ordering defendant to pay all of Dr. Covington's therapy charges as restitution. Defense counsel claimed restitution should only be $1,100. The trial court again stated ordering only $1,100 in restitution would be in violation of the law requiring full restitution and set the matter for a hearing on the issue of whether Doe's therapy arose from defendant's crimes against Doe.

At the restitution hearing on May 1, 2009, Dr. Covington testified that, as to the therapy charges covered by PacifiCare, Doe incurred the charges and would have been responsible for the charges in the absence of coverage. Defense counsel then withdrew his objection to payment of the entire amount charged and agreed that full restitution as to all of the therapy charges was required regardless of whether PacifiCare paid a portion of the charges. Defense counsel acknowledged: "The court cites the law, which initially I disagreed with and upon research learned that the court was correct, that— that the court should be ordering restitution in the full amount, so long as the full amount is fully related to the incidents that occurred."

Thereafter, defense counsel objected to the restitution amount on the ground there was insufficient evidence that all of the therapy was causally related to defendant's charged crime of rape. Defense counsel argued that only a very small portion of the therapy related to defendant's crime. Therefore the court should not order restitution or should substantially reduce the amount ordered.

The trial court found that all of the therapy, which occurred after the crime, was causally related to defendant's relationship with Doe and his commission of the crime. The court thus ordered defendant to pay as restitution the entire cost of Doe's therapy.

The People argue defendant forfeited his objection to paying all of the therapy charges by defense counsel's conceding the trial court was correct in not reducing restitution based on PacifiCare paying a portion of the charges.

 Regardless of whether the contention was forfeited, we conclude the trial court appropriately ordered restitution for the entire amount billed for Doe's therapy. Under section 1202.4, the trial court was required to order full restitution regardless of whether insurance covered a portion of Doe's losses. (§ 1202.4, subd. (f).) As stated by the California Supreme Court in *People v. Birkett* (1999) 21 Cal.4th 226, 246 [87 Cal.Rptr.2d 205, 980 P.2d 912] (*Birkett*), "It appears clear from this language that the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all losses *his crime had caused, and* that such reparation should go entirely to *the individual* . . . , regardless of that victim's reimbursement from other sources. . . . [¶] Thus, . . . the immediate victim was entitled to receive from the probationer the full amount of the loss caused by the crime, regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses. Third parties . . . such as private insurers, who had already reimbursed the victim were thus left to their separate civil remedies, if any, to recover any such prior indemnification either from the victim or from the probationer. [Citations.]" (*Ibid.*)

Defendant cites *In re K.F.* (2009) 173 Cal.App.4th 655, 664, for the proposition that presenting a bill for services provided to a crime victim does not constitute substantial evidence of the amount of loss sustained by the victim. (*Ibid.*) Defendant argues that in the instant case the record is thus devoid of any evidence that Doe sustained losses amounting to $4,764.71 in charges for therapy. Defendant claims there was no evidence Doe was being held financially responsible for or had paid in excess of $1,100 for the therapy.

In *In re K.F., supra*, 173 Cal.App.4th 655, the defendant's assault victim claimed restitution losses for her medical treatment at Kaiser and for ambulance services. Statements of benefits generated by Kaiser and by the ambulance company were provided in support of the claims. (*Id.* at p. 662.) The defendant complained the evidence did not establish the victim's actual loss. (*Ibid.*)

In *In re K.F., supra*, 173 Cal.App.4th 655, the victim received a letter notifying her that, in the event she received settlement from another party for her losses, Kaiser was entitled to obtain reimbursement for specified medical benefits provided to the victim. The *K.F.* court concluded that a letter, itemizing billed charges for the victim's treatment and stating Kaiser was entitled to reimbursement, constituted substantial evidence that the charges were incurred by the victim for purposes of ordering restitution. (*Id.* at p. 663.)

The court in *In re K.F.*, however, concluded a second document did not constitute substantial evidence in support of restitution for the ambulance services. The second document was entitled, "Explanation of Benefits" from Kaiser and listed $582.32 in ambulance charges. (*In re K.F., supra*, 173 Cal.App.4th at p. 664.) The document stated it was not a bill; showed zeros in the column marked "Coinsurance/Copayment"; contained no entry in the "Amount Paid" column; and stated in the space, "Your Obligation," the sum of "0.00." (*Ibid.*) The court concluded the document did not constitute substantial evidence that the victim incurred a debt or loss in any amount for ambulance services. (*Id.* at pp. 664–665.)

Unlike the second document in *In re K.F.*, the billing summary of therapy charges in the instant case showed the specific amount actually billed for each therapy session, and Dr. Covington testified that Doe was responsible for paying the entire amount charged in the event Doe's insurance did not cover the billed amount.

We conclude there was sufficient evidence establishing that Dr. Covington charged Doe $4,764.71 for therapy and that Doe was ultimately responsible for paying that amount. Even though there was evidence a portion of that amount was paid by PacifiCare, under *Birkett, supra*, 21 Cal.4th at page 246, defendant was required to pay as restitution the full amount charged for Doe's therapy.

### 5. Dr. Covington's $500 Witness Fee

Defendant contends the trial court erred in ordering him to pay as restitution Dr. Covington's $500 witness fee charged for attending the

restitution hearing pursuant to defendant's subpoena duces tecum. Defendant argues that Dr. Covington was a percipient witness and therefore available through subpoena. Citing section 1329,[2] defendant claims Dr. Covington was not entitled to an expert witness fee since section 1329, subdivision (a) allows payment of a percipient witness fee in the amount of only $12 per day for a witness appearing in court pursuant to a subpoena.

 Defendant waived or, rather, forfeited his right to challenge the $500 restitution award by failing to object below. "Claims of error relating to sentences 'which, though otherwise permitted by law, were imposed *in a procedurally* or factually *flawed manner*' are waived on appeal if not first raised in the trial court. [Citation.] For example, the waiver doctrine precludes appellate review in cases where a defendant fails to object to the reasonableness of a probation condition. [Citation.] The California Supreme Court has explained: 'A timely objection allows the court to modify or delete an allegedly unreasonable condition or to explain why it is necessary in the particular case. The parties must, of course, be given a reasonable opportunity to present any relevant argument and evidence. A rule foreclosing appellate review of claims not timely raised in this manner helps discourage the imposition of invalid probation conditions and reduce the number of costly appeals brought on that basis.' " (*People v. Brach* (2002) 95 Cal.App.4th 571, 577 [115 Cal.Rptr.2d 753].)

 An objection to the amount of restitution may be forfeited if not raised in the trial court. "The unauthorized sentence exception is 'a narrow exception' to the waiver doctrine that normally applies where the sentence 'could not lawfully be imposed under any circumstance in the particular case,' for example, 'where the court violates mandatory provisions governing the length of confinement.' [Citations.] The class of nonwaivable claims includes 'obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings.' " (*People v. Brach, supra,* 95 Cal.App.4th at p. 578.) The appropriate amount of restitution is precisely the sort of factual determination that can and should be brought to the trial court's attention if the defendant believes the award is excessive. Here, because defendant did not object to the amount of restitution in the trial court, he forfeited our consideration of the issue on appeal.

---

[2] It appears defendant erroneously cited section 1239, rather than section 1329, in his appellant's reply brief. Section 1239 pertains to the manner of taking an appeal; automatic appeal from a death judgment; and continuation of representation by counsel.

### 6. Disposition

The judgment is affirmed.

McKinster, J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 2010, S184925.