Filed 5/31/13  P. v. Wolcott CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JANA WOLCOTT,<br><br>    Defendant and Appellant. | D061470<br><br><br><br>(Super. Ct. No. SCD234091) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Thomas E. Robertson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry J.T. Carlton and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Jana Wolcott guilty of driving under the influence of alcohol, driving with a measurable blood alcohol level of .08 or above, and hit and run with injury.  She

appeals, contending (1) the trial court inaccurately responded to a jury question, (2) the trial court erred by ordering her to pay restitution to the victims because she did not cause the accident, and (3) even if she was required to pay victim restitution, the trial court miscalculated the amount. We reject Wolcott's arguments and affirm the judgment.

FACTUAL BACKGROUND

Just after midnight on May 8, 2011, Jack Vecchio was driving his sport utility vehicle in the fast lane heading west on highway 52 in San Diego. Mary Jane Kahleck was a passenger in the vehicle. They noticed a black car driving erratically. According to Kahleck, that car exited the highway before they approached Santo Road. As the road began to curve just east of Santo Road, a car hit Vecchio's vehicle on the rear passenger side. The rear end of Vecchio's vehicle fishtailed toward the center divide. One or two seconds later, they were hit again. The second impact caused Vecchio's vehicle to roll over five times, ultimately landing on its roof in the middle of the highway. Neither Vecchio nor Kahleck saw the car that hit them.

Vecchio was able to climb out of the vehicle and then pull Kahleck out. Jamie Zadoronzy and her husband stopped to offer help. Several other people also stopped on the side of the highway. Zadoronzy's husband and a few other people helped Vecchio and Kahleck climb over the guardrail where they laid down. Several minutes after the accident, two corpsmen arrived at the scene with a medical supply bag. They took Vecchio's and Kahleck's vital signs.

Vecchio, Kahleck, and Zadoronzy did not see Wolcott or anyone else at the scene that appeared to be involved in the accident. They asked everyone they saw if there was

2

anyone else involved in the accident. Nobody admitted to being involved or provided their contact information.

At approximately 12:24 a.m., two California Highway Patrol officers arrived at the accident scene. One officer observed a sport utility vehicle overturned in the middle of the highway and several cars parked in the center median and right shoulder. An officer told people at the scene to leave if they did not witness the accident or were not involved.

Vecchio told an officer about the black vehicle he saw driving erratically prior to the crash. While at the scene, officers received information from dispatch that another person was involved in the collision. An officer called the phone number provided by dispatch and reached Wolcott who identified herself and provided her address to the officer. Officers went to Wolcott's home and saw a silver Ford Escort with damage to its front driver's side. Wolcott told the officers she was driving in the slow lane on highway 52 when a car changed lanes in front of her, hit her car and then rolled over. Wolcott also stated that she pulled over at the crash and helped the victims out of their vehicle, but left when someone with a medical bag told her and others to leave. She explained that she got lost when she left, but called 911 when she eventually got home.

While speaking with Wolcott, officers smelled alcohol and noticed that Wolcott's eyes were red and glassy. Wolcott stated that she drank one margarita and stopped drinking around 11:00 p.m. After conducting field sobriety tests, officers administered an alcohol breathalyzer test shortly after 1:30 a.m. The results of the breathalyzer test showed blood alcohol levels of .156 and .165. Officers arrested Wolcott for driving

3

under the influence.  Wolcott subsequently took breath tests at the Las Colinas Detention Facility at 2:14 and 2:16 a.m., resulting in measurements of .14 and .13.

Based on statements from the parties, physical evidence from the vehicles and at the scene, and Wolcott's intoxication, officers determined the cause of the accident. Officers believed Wolcott was traveling in the middle lane while Vecchio and Kahleck were in the fast lane.  As the road curved, Wolcott was unable to negotiate the curve and instead of following the road, she continued traveling straight, which caused the left front of her car to hit the right rear tire of Vecchio's vehicle.  As a result, Vecchio's vehicle rolled over.

Kahleck and Vecchio both suffered injuries.  Kahleck had a broken neck, two breaks in her back, a bruised sternum, fluid in her lungs and other serious injuries. Vecchio suffered road rash, contusion to his left shoulder, contusion to his back, and a cervical sprain.

## DISCUSSION

### I. *Response to Jury Question*

A.  Additional Background

At trial, an officer testified the safest way for someone to notify the police that she was involved in an accident would be to exit the freeway and call 911.  When asked if it was appropriate for someone who lived nearby to call 911 from their home, the officer stated, "As long as they called and got ahold of us, I think that in my opinion is feasible. We can respond there in a timely manner."

4

On the charge of hit and run with injury, the trial court instructed the jury with CALCRIM No. 2140 regarding the failure to perform a legal duty following a vehicle accident that caused injury to another person. That instruction states, the People must prove the following: "The defendant willfully failed to perform one or more of the following duties: (a) [t]o immediately stop at the scene of the accident; (b) [t]o provide reasonable assistance to any person injured in the accident; (c) [t]o give to the driver or occupants of any vehicle collided with or any peace officer at the scene of the accident all of the following information: [t]he defendant's name and current residence address; AND [t]he registration number of the vehicle she was driving; (d) [w]hen requested, to show her driver's license to the driver or other occupants of any vehicle collided with or any peace officer at the scene of the accident." The instruction also informed the jury that "[t]he duty to *stop immediately* means that the driver must stop his or her vehicle as soon as reasonably possible under the circumstances."

During deliberations, the jury submitted the following question to the court: "What is the legal requirement to provide name, address [and] drivers license on scene vs. calling. If peace officer not on scene can a call to 911 meet this legal obligation? Police officer testified 'ok' but law seems to indicate otherwise." Outside the presence of the jury, the court and trial counsel discussed the question and the court's proposed response of "No; a call to 911 does not satisfy the obligation to give the driver or occupants or any peace officer at the scene the required information." Defense counsel objected to the proposed response, arguing the law required a driver involved in an accident to fulfill her duties "as soon as reasonably possible" and the jury should be able

5

to determine whether Wolcott was justified in leaving the scene. When the court inquired as to whether Wolcott actually wanted a "necessity instruction" that she could not stop her vehicle because it was too dangerous, defense counsel stated, "No. I don't. . . . I am asking for a reasonable instruction. I'm not asking for a necessity instruction." After further argument, the court stated that it was willing to include language regarding "necessity," but defense counsel reiterated his position that he wanted language regarding whether Wolcott's conduct was "reasonable." Ultimately, the court gave its proposed response to the jury with the addition of "Please review pages 26, 27, and 28," which was CALCRIM No. 2140.

B. Analysis

Wolcott argues the trial court abused its discretion by responding to the jury's question with an inaccurate statement of the law. Specifically, she asserts the trial court's response was inaccurate because the record supported an instruction on the affirmative defense of necessity. The Attorney General argues Wolcott waived her argument by rejecting a necessity instruction at trial. We agree with the Attorney General.

Here, the trial court conferred with counsel regarding its response to the jury's question. Despite the trial court's willingness to include language in its response regarding the defense of necessity, Wolcott rejected the suggestion. Thus, we conclude defense counsel's unequivocal rejection of a necessity instruction waives Wolcott's contention on appeal. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1193.)

## II. *Restitution*

### A. Additional Background

The People charged Wolcott with driving under the influence causing injury and driving with a measurable blood alcohol level of .08 or above causing injury. The court instructed the jury that to find Wolcott guilty of these offenses, it was required to find she committed an illegal act or neglected to perform a legal duty. The People alleged Wolcott committed an illegal act by turning from her lane of travel when it was not safe and failed to perform her legal duty to exercise ordinary care at all times and maintain proper control of her vehicle. The jury found Wolcott not guilty of the offenses causing injury but convicted her on the lesser included offenses of driving under the influence of alcohol and driving with a measurable blood alcohol level of .08 or above.

As a condition of probation, the court ordered Wolcott to pay restitution to Vecchio and Kahleck in the total amount of $170,182.68. Each victim received $25,000 in an insurance settlement. The court found Kahleck incurred $158,586.54 in economic losses, $800.29 in costs, and $16,666.67 in attorney fees. After an offset for the $25,000 insurance payment, the court found Kahleck was entitled to restitution in the amount of $151,053.50. The court found Vecchio incurred $35,034.34 in economic losses, $761.51 in costs, and $8,333.33 in attorney fees. After the $25,000 offset, the court concluded Vecchio was entitled to restitution in the amount of $19,129.18.

### B. Imposition of Restitution Condition

Wolcott argues the trial court erred by requiring her to pay victim restitution because she did not cause the accident resulting in the victims' injuries. Specifically, she

claims that because the jury acquitted her on the charge of driving under the influence causing injury, it must have believed her version of the events, which was that the victims entered her lane of traffic and hit her car. We reject her argument.

"The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) Courts have the discretion to impose victim restitution as a condition of probation, even if the victim's loss was not directly caused by the criminal conduct underlying the defendant's conviction. (*Id.* at p. 1121.) A probation condition is valid unless it "'(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'" (*People v. Lent* (1975) 15 Cal.3d 481, 486.)

Here, Wolcott asserts that because the jury found her not guilty of driving under the influence causing injury, it rejected the People's allegation that she failed to operate her vehicle in a safe manner and thus must have determined she was not a "cause" or "contributing factor" to the accident. Similar reasoning was rejected in *People v. Phillips* (1985) 168 Cal.App.3d 642, 646–650 (*Phillips*). As the court noted in that case, the jury's acquittals on the greater offenses does not absolve the defendant of responsibility for the accident. (*Id.* at p. 648.) Even if the jury found Wolcott did not improperly turn from her lane of travel when it was not safe or fail to perform her legal duty to exercise ordinary care at all times and maintain proper control of her vehicle, it "was not called

8

upon to decide whether [Wolcott's] *intoxication* was a proximate cause of the accident and ensuing injuries." (*Ibid.*)

"The fact the jury did not resolve [Wolcott's] culpability for the accident as a drunk driver did not bar the trial court from so doing." (*Phillips*, *supra,* 168 Cal.App.3d at p. 648.) In the case before us, the trial court made a finding that Wolcott's "intoxication did contribute to th[e] accident" and thus found restitution proper. The record before us supports the trial court's finding. Thus, we conclude the trial court did not abuse its discretion in ordering Wolcott to pay restitution as a condition of probation.

C. Amount of Restitution

Wolcott argues the trial court miscalculated the amount of victim restitution by using an improper number for Kahleck's attorney fees. Wolcott essentially asserts the trial court erroneously doubled Kahleck's attorney fees from $8,333.33 to $16,666.67 in calculating the restitution award.

"An objection to the amount of restitution may be forfeited if not raised in the trial court." (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218.) "The appropriate amount of restitution is precisely the sort of factual determination that can and should be brought to the trial court's attention if the defendant believes the award is excessive." (*Ibid.*)

Here, the trial court held a restitution hearing where it detailed the calculation of the amount of restitution Wolcott was required to pay each victim. Based upon our review of the record, Wolcott did not object to the restitution amount or to the amount of

9

attorney fees included in the calculation.  Thus, Wolcott's failure to object in the trial court forfeited our consideration of her claim on appeal.

DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

10