Filed 12/19/13  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056469 |
| v. | (Super.Ct.No. RIF1104514) |
| JUAN HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Eric G. Helgesen, Judge. (Retired judge of the former Tulare Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, Meagan Beale, and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Juan Hernandez raped and molested Jane Doe between March 2010 and August 2011. Defendant was convicted of six counts of aggravated sexual assault on a child (rape), seven counts of committing forcible lewd acts, and one count of kidnapping to commit rape.

Defendant makes one claim on appeal that the upper term sentences of 10 years on 5 of the Penal Code section 288, subdivision (b)(1),[1] forcible lewd act convictions violated the prohibition against ex post facto laws. Remand for resentencing is required. Respondent concedes the error but contends we can reduce the sentence on appeal without remanding for resentencing.

We will modify the sentence on appeal and otherwise affirm the judgment.

I

PROCEDURAL BACKGROUND

A Riverside County jury found defendant guilty of six counts of aggravated sexual assault (rape) of Doe pursuant to section 269, subdivision (a)(1) (counts 1-6); seven counts of forcible lewd acts against Doe pursuant to section 288, subdivision (b)(1) (counts 7-13); and one count of kidnapping to commit rape pursuant to section 209, subdivision (b)(1) (count 14). Defendant was sentenced to six consecutive state prison terms of 15 years to life on counts 1 through 6, and an additional 7 years to life for the kidnapping to commit rape conviction. In addition, for each of the forcible lewd act convictions in counts 7 through 13, he received the upper term sentence of ten years,

---

[1]     All further statutory references are to the Penal Code.

2

which were ordered to run consecutive to each other and the indeterminate term. His total state prison sentence was 97 years to life, plus 70 years.

II

FACTUAL BACKGROUND

A.     *People's Case-in-Chief*

1.     *Sexual acts against Doe*

A.P. married defendant on July 26, 2011. They lived in Home Gardens. They had lived together for five years prior to their marriage and dated prior to living together. They had a four-year-old daughter together and A.P. also had a son named U.L. who lived with them. Jane Doe, who was A.P's niece, also lived with them for a period of time.

A.P. attended church four days a week. She usually took the children with her. However, starting on January 1, 2010 until August 2011, she attended bible study on Sundays and the children did not go with her. Defendant dropped her off in the morning and watched the children for her. She was gone at the bible study from 9:00 a.m. to 3:00 p.m. Defendant was alone with the children while she was at bible study.

Doe was 12 years old at the time of trial. While A.P. was at bible study, defendant would touch her. The first time it happened, they were on the bed together lying down. The bedroom door was locked. Defendant took his clothes off and got on top of her. Doe tried to push defendant off but she was not able to get him off her. He put his penis on her vagina but it did not go in. Doe told defendant that it hurt her. He ejaculated. He

3

told her not to tell anyone. At trial, she said this happened at least seven times when his penis did not go into her.

Another time, Doe, U.L., the younger sister, and defendant were at the park at night. Defendant left U.L. and the younger sister on some rocks. He gave U.L. his cellular telephone. He "pulled" Doe to another part of the park. Doe did not want to go with him. Defendant took Doe to some rocks. He then pulled her pants down. Defendant also pulled his pants down. He put his penis on her vagina but it did not go in. Doe struggled with defendant.

Defendant took Doe to another location at the park near a soccer field. Defendant pushed her on the ground, took off hers and his clothes, and got on top of her. His penis went in her vagina. This was the last incident.

Another time, she had been going to the bathroom, and when she came out he grabbed her from behind. He pulled her pants and his own pants down. On a separate occasion, he grabbed her, and took her from the kitchen into the bedroom. He locked the door to the bedroom. Defendant took off both of their pants. Defendant put his penis in her vagina at least five times.

When defendant tried to have sex with Doe, she would punch him and he would just laugh. He held her hands to her side. She had tried to run away but he would grab her. Doe recalled that she was in fourth grade when the touching started; she thought she was 10 years old at the time. She lived with A.P. and defendant for two years starting in fourth grade. Doe did not tell anyone what was happening because she was afraid of defendant.

4

2. *RCAT interview of Doe*

Doe was interviewed by a member of the Riverside County Child Assessment Team (RCAT) on August 20, 2011. In that interview, she stated that she was 11 years old, and that defendant had started touching her when she nine or ten years old. The first time defendant touched her she was watching television in his room. They were both on the bed and defendant got on top of her. He touched her breast and legs over her clothes. Doe pushed him away and left the room.

The next time he carried her into his room and took off both of their clothes. He put his penis on her. Doe struggled to keep her clothes on. He touched his hand to her breasts. Doe was crying and tried to hit him with her hands. He held her down. She did not feel anything inside her. Defendant promised her that he would not do it again. Doe believed she was 10 years old when this happened.

Defendant tried to put his penis in her vagina the following day but was unsuccessful. The next day, defendant carried Doe to his room while she was sleeping; A.P. was at Sunday bible study. When she woke up, he pulled her pants down. This time he put his penis in her vagina and moved it back and forth. It did not hurt as much. He ejaculated. He did this to her several more times. Two or three times she saw a condom on his penis.

One time A.P. was home and in her bedroom. Doe had been in the bathroom and then went to the kitchen. Defendant grabbed her and put her against a wall with her back to him. He pulled down both of their pants. He put his penis either in or on her vagina and moved it back and forth.

Right after the incident in the kitchen, they went to a nearby park. Defendant had U.L. and the younger sister play hide-and-seek. Defendant took Doe to the bushes and told her he wanted to have sex with her. He was interrupted by U.L. and the younger sister yelling for him. They then went to another area where defendant took her to a tree. He got on top of her and pulled down her pants. She was not clear if defendant put his penis in her vagina.

A few days later Doe told A.P. what had been happening to her because she could not take it anymore.

### 3. *Additional witnesses*

On August 19, 2011, Jane Doe told A.P what had been happening to her. A.P. had noticed that Doe was very quiet and appeared afraid of defendant. A.P. confronted defendant and they got into an argument. A.P. called the police.

U.L. was seven years old at the time of trial. U.L. recalled going to the park with his younger sister, Doe and defendant. Defendant told U.L. that he and Doe were going to play hide-and-seek with him. He hid by a rock. He thought defendant and Doe went to hide. Defendant had given U.L. his cellular telephone that he subsequently lost in the park. U.L. saw defendant hold Doe's hand.

One time U.L. had unlocked a door at the house using a knife. Inside the room, he saw defendant naked. Doe was also in the room and she was naked. Doe was lying down on the bed.

A child abuse exam was conducted on Doe on August 23, 2011. It involved examining her vaginal and anal area with a microscope device. Doe's hymen was intact

6

and she had no signs of trauma. Doe had her period in July 2011. Since she had her period, her hymen would be more elastic and may not be injured during intercourse. The hymen could have healed itself.

Doe told an officer that the last time defendant had touched her was August 10, 2011.

### 4. *Evidence Code section 1108 testimony*

A.E. was 16 years old when she testified. A.E. lived by defendant in Home Gardens. Her family attended the same church as defendant's family. When A.E. was 14 years old, defendant slapped her butt and touched her breast, and she told him to stop. When she was 15 years old, they were in a bedroom and defendant took off both of their clothes. They had sex. They had sex approximately five times. A.E. would tell him that she did not want to have sex but he would just take off her clothes anyway. She did not fight back. Defendant would promise A.E. that he was going to take her away with him. He also gave her money. One-week prior to her trial testimony, A.P. had confronted A.E. at church about her having sex with defendant. This was the first time A.E. told anyone about what had happened with defendant.

B.    *Defense*

Dr. C. Paul Sinkhorn was an obstetrician/gynecologist.  He reviewed the child abuse exam.  A child who reports that the last sexual activity was two weeks prior to an exam would probably have tearing of the hymen or injury to the vaginal area.  Dr. Sinkhorn would expect some lasting hymen injury if a child were 10 years old and raped repeatedly.  Doe's examine was not consistent with multiple episodes of vaginal intercourse.

Defendant testified on his own behalf.  Doe stayed with her grandmother on the weekends.[2]  Doe was never at the house with him on Sundays while A.P. was gone.  He had never been to A.E.'s house.  He only saw A.E. at church.  Doe and A.E. were lying.

III

EX POST FACTO VIOLATION

Defendant contends that the trial court erroneously relied upon a version of section 288, subdivision (b)(1), which was amended during the time period alleged that he committed the crimes, to erroneously impose the upper term of 10 years on counts 7, 8, 9, 12 and 13.  Such imposition of the upper term violated his federal constitutional right against ex post facto laws.

---

**2**      Doe's grandmother testified on rebuttal that Doe stayed with defendant and A.P. some weekends.

8

A.    *Additional Factual Background*

In the information, it was alleged that as to counts 7, 8 and 9, they occurred between March 1, 2010 and February 28, 2011.  As to counts 12 and 13, it was alleged that they occurred between March 1, 2010 and August 31, 2011.  On the verdict forms, the jury found counts 7, 8 and 9 were committed between March 1, 2010 and February 28, 2011.  Counts 12 and 13 were found by the jury to have been committed between March 1, 2010 and August 31, 2011.  The jury was instructed that the crimes in the case were committed between March 1, 2010 and August 31, 2011, and that individual verdict forms would provide the dates for each crime.

In its sentencing memorandum filed with the court, the People stated that defendant must receive consecutive sentences on counts 7 through 13.  The People stated, "The punishment triad for Penal Code section 288(b)(1) is five, eight, or ten years in state prison."  The People requested the upper term on all of the section 288, subdivision (b)(1) convictions.  The People set out four aggravating factors.  The probation report stated that the upper term sentence for violations of section 288, subdivision (b)(1), was 10 years.

During sentencing, the trial court stated it had read the probation report.  According to the clerk's transcript, the trial court determined that count 7 would be the principal term.[3]  Thereafter, the trial court imposed the upper term of 10 years on counts 8, 9, 12 and 13, which were to run consecutive to each other and count 7.  The trial court

---

[3]    The reporter's transcript only shows the trial court stated that counts 7, 8, 9, 10, 11, 12 and 13 would be consecutive to each other.

also imposed 10-year consecutive sentences on counts 10 and 11. **4** The trial court found the upper term was appropriate based on the facts of the case.

B. *Analysis*

We initially note that defendant did not object to the sentence below on the same grounds raised on appeal. "'The unauthorized sentence exception is "a narrow exception" to the waiver doctrine that normally applies where the sentence "could not lawfully be imposed under any circumstance in the particular case," for example, "where the court violates mandatory provisions governing the length of confinement." [Citations.] The class of nonwaivable claims includes "obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings."' [Citation.]" (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218 [Fourth Dist., Div. Two].) We review the claim despite the failure to object because defendant's sentence was unauthorized based on the facts of this case.

An ex post facto law "increase[s] the punishment associated with the crime after its commission. [Citation.]" (*People v. Acosta* (2009) 176 Cal.App.4th 472, 475.) The ex post facto clauses "protect against the later adoption of a statute that inflicts greater punishment than the law in effect at the time of the commission of the crime." (*People v. Riskin* (2006) 143 Cal.App.4th 234, 244.)

---

**4** Counts 10 and 11 were found by the jury to have occurred between March 1, 2011 and August 31, 2011.

Former section 288, subdivision (b)(1), provided a punishment triad of three, six, or eight years.  Section 288, subdivision (b)(1), was amended on September 9, 2010 to change the punishment triad to five, eight or ten years.  (Stats. 2010, ch. 219, § 7, eff. Sept. 9, 2010.)

The crimes charged in counts 7, 8, and 9 were alleged to have occurred between March 1, 2010 and February 1, 2011.  Counts 12 and 13 were alleged to have occurred between March 1, 2010 and August 31, 2011.  The jury was not required to state the specific date upon which the different forcible lewd acts were committed.  Doe testified that defendant started touching her right after A.P. started bible study.  A.P. testified she started bible study in January 2010.  Doe testified at trial and in the RCAT interview that defendant continued raping her, and committing forcible lewd sex acts against her until August 10, 2011.

Based on the foregoing, the jury could have concluded that all of the forcible acts occurred prior to September 29, 2010.  There is nothing in the record to support that the jury found all of the forcible lewd acts were committed after that date.  As such, applying the amended version of section 288, subdivision (b)(1) to impose 10-year sentences rather than 8-year sentences violated the prohibition against ex post facto laws.  (See *People v. Hiscox* (2006) 136 Cal.App.4th 253, 257, 259 [The One Strike Law, that was added in 1994, could not be applied to increase the defendant's sentence for crimes committed between 1992 and 1996 as it would violate the prohibition against ex post facto laws.])

11

Respondent contends that we can modify the sentence on appeal and order the trial court to prepare an abstract of judgment reducing the sentence on counts 7, 8, 9, 12 and 13 to eight years without remanding the matter for resentencing. Defendant responds that he is entitled to complete resentencing because, although the trial court would likely resentence him to the upper term on the forcible lewd act offenses, it was not required to. Since the trial court retains the discretion to impose the middle term, the case should be remanded for resentencing.

Section1260 provides as follows: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

Although we could remand the case for a new sentencing hearing, we decline to do so. The trial court specifically found the upper term appropriate for counts 7, 8, 9, 12 and 13 based on the facts of this case which it found "was one of the more outrageous ones" it had heard. No credible argument can be made that the trial court would reduce the sentences to the middle term upon remand. There are no other issues requiring an exercise of the trial court's discretion. The principal term would become either count 10 or 11, which both carry a 10-year sentence. Remand would be a waste of judicial resources under the circumstances. We will instead modify the judgment as we are authorized to do by section 1260.

IV

DISPOSITION

We modify the sentences on counts 7, 8, 9, 12 and 13 to eight years.  We deem count 10 to be the principal term.  We order the clerk of the Riverside County Superior Court to prepare an amended minute order for the date of sentencing and an abstract of judgment.  The abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

13