CHRISTIANSEN, Judge
(concurring in part and dissenting in part):
28. I concur in Part II of the majority opinion regarding Ruiz's motion to disqualify. However, I respectfully dissent from Part I, which addresses the trial court's calculation of complete restitution. Unlike the majority, I would conclude that the trial court abused its discretion when it deducted the estimated per-hour cost of several of Victim's therapy sessions from the complete restitution. In my opinion, given the evidence that was introduced at the restitution hearing and the trial court's extensive findings regarding the required inpatient therapy necessitated by Ruiz's criminal actions, the trial court should have retained the original complete restitution order.
'A 24 As the majority opinion here acknowledges, the Ruiz I majority's "ultimate concern" was with the lack of findings in support of the trial court's conclusion that Victim needed nine months of inpatient therapy to address those issues caused or exacerbated by Ruiz's criminal actions. See supra T 17. Thus, on remand, the trial court was instructed to address "the extent to which the therapy at La Europa was necessitated by preexisting conditions that were neither caused nor exacerbated by Ruiz's actions." Ruiz I, 2013 UT App 166, ¶ 11, 305 P.3d 2283. However, nothing in Ruiz I limited the trial court's ability to reinstate its previous order, and the trial court would have acted within its discretion to do so and award the full amount of Victim's inpatient therapy, ie., $51,000, as long as that amount was supported by detailed factual findings. See id. T1 11, 14.
25 On remand, the trial court concluded that the tuition at Lia Europa "was reasonable for all services rendered," and it had "no difficulty in finding ... [that Victim] would not have had to go to La Europa but for the actions of [Ruiz]." The court further noted that Victim stayed at La Europa for nine months "because it took that long to start making progress on the trauma [Ruiz] caused." +Moreovér; the court observed that "[a] crime as in this case would certainly have some impact on and exacerbate mental conditions and aberrant behavior preceding the offense, contributing to a need for the benefits arising from nine months of residential treatment." In addition, the trial court noted that while certain individual therapy sessions did not "directly address[ ] the trauma" caused by Ruiz, the "staff [at La Euro-pal appeared to think they had to work on the other [preexisting] issues to address the trauma" caused by Ruiz. Thus, the trial court apparently found that all of Victim's inpatient therapy, which occurred after Ruig's crime, was causally related to Ruiz's commission of the crime. It makes no sense, then, for the trial court to deduct any estimated per-hour cost of outpatient treatment from Victim's restitution award, and the trial court seem *1236 ingly did so based solely on its misreading of the holding in Ruiz I.
126 I believe that the trial court should have, given its findings on remand, reinstated.its previous order requiring Ruiz to pay the entire cost of Victim's inpatient therapy.[5] See, e.g., Rich v. State, 890 N.E.2d 44, 50 (Ind.Ct.App.2008) ("The purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused .and to defray costs to the victim caused by the offense." (citation and internal quotation marks omitted)). This is especially true given that the trial court found that Victim "was not charged extra for that treatment," that "[the residential tuition was the same whether her treatment was for a single symptom or more than one," and that she "would have paid the same monthly tuition if her only issue was recovery from the trauma suffered at the hands of [Ruiz]," [6]
T 27 Moreover, in my view, Victim's mental health conditions cannot be fairly compared to the. majority opinion's knee-and-shoulder example. See supra T15. In that example, the victim's preexisting shoulder injury was mot exacerbated by the accident and had no relation to the success of the victim's knee surgery. In this case, however, Victim's mental health conditions were exacerbated by Ruiz's actions,. Indeed, as the majority opinion acknowledges, the trial court found Vietim was "doing better in outpatient individual and family therapy" and that her problems escalated after her encounter with Ruiz to the point that she required inpatient therapy. See supra 1 18. Likewise, whereas a healthy shoulder is not necessarily crucial to the complete recovery of one's knee, mental health conditions are often sufficiently interrelated such that one condition cannot be satisfactorily treated without addressing one or more others. Such is the case here, where the. La Europa staff believed "they had to work on [Victim's] other issues to address the trauma" caused by Ruiz's actions. Thus, Victim's situation is clearly distinguishable from the majority opinion's knee-and-shoulder example.
{28 Based on the foregoing, I would conclude that the trial court abused its disceretion when it deducted the estimated per-hour cost of several therapy sessions from Victim's restitution award, and I would therefore reverse the order and remand for the trial court to reinstate its previous restitution award for the entire cost of Victim's inpatient therapy. Consequently, I respectfully dissent in part from the majority opinion.

. In evaluating Ruiz's argument that the trial court exceeded its discretion by ordering complete restitution in the amount of $42,475, see supra I 11, I do not think that we are required to conclude only that the restitution ordered was either too high (as Ruiz contends) or that the award was correct (as determined by the majority). Namely, by challenging the trial court's restitution order on appeal, Ruiz opened the door for this court to fully examine that restitution award. The State did not also need to cross-appeal for us to. reach this issue.

. - It is also important to note that "[rlequiring a victim of a sexual assault or rape .. « to disclose the details of her communications with her therapist when requesting restitution for therapy costs would tend to deter [the] vietim from requesting restitution for the cost of therapy." People v. Garcia, 185 Cal.App.4th 1203, 111 Cal.Rptr.3d 435, 441 (2010). Where, as here, there was evidence that Victim's inpatient therapy was necessitated by Ruiz's actions and related to her being victimized by Ruiz, I do not believe that "[plrying into the specifics of confidential patient-therapist communications was ... necessary for purposes of ordering [complete] restitution." See id. at 442. .