Filed 9/10/14  P. v. Gurrola CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059181 |
| v. | (Super.Ct.No. SWF1202853) |
| MARTIN MIGUEL GURROLA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Kelly L. Hansen and Timothy F. Freer, Judges.  Affirmed.

Jennifer A. Gambale under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Martin Miguel Gurrola appeals after he pleaded guilty to four offenses, with one strike prior. He complains that the victim restitution order was not supported by substantial evidence. We affirm.

FACTS AND PROCEDURAL HISTORY

Defendant was a member of the Old Town Trece or Vatos Trece criminal street gang. He participated in a number of crimes with other members of the gang and for the benefit of the gang. A felony complaint filed on July 17, 2012, alleged a number of charges against defendant and other gang members.

The complaint in count 1 charged defendant with a residential burglary committed on June 30, 2012. In count 2, defendant was charged with active participation in a criminal street gang on the same date. In count 3, defendant was charged with a July 4, 2012 theft of credit cards. In count 4, defendant was charged with participation in a criminal street gang in connection with the July 4, 2012 date. In count 5, defendant was charged with another residential burglary, committed on July 11, 2012. Count 6 charged defendant with receiving stolen property—social security and identification cards—on the July 11 date. Count 7 charged defendant with participation in a criminal street gang on or about July 11, 2012.

Count 8 charged another gang member with receiving stolen identification cards on June 30, 2012, the date of the burglary in count 1. Count 9 charged a third gang member with receiving stolen identification cards on the date of the June 30, 2012 burglary. The gang member named in count 9 was named in count 10 and charged with

2

being an active member of a criminal street gang. In count 11, a fourth gang member was charged with receiving stolen credit cards on July 5, 2012. In count 12, the fourth gang member was charged with obtaining money and property by fraudulent use of forged access cards or access card information. In count 13, the fourth gang member was charged with receiving stolen credit cards on July 5, 2012. Count 14 alleged that the fourth gang member had committed an additional offense of obtaining money and property by fraudulent use of access cards or account information. Count 15 charged the fourth gang member with receiving stolen property—military identification cards—on or about July 5, 2012. Count 16 charged the fourth gang member with possession of methamphetamine on July 5, 2012. Count 17 charged the fourth gang member with receiving stolen property, consisting of a stolen cell phone, on the date of the June 30 burglary. Count 18 charged a fifth gang member with receiving stolen property, a stolen cell phone, on or about June 30, 2012. In count 19, the fifth gang member was charged with active participation in a criminal street gang on or about June 30, 2012.

The information alleged gang enhancements in connection with several of the charged offenses. It also alleged an enhancement against defendant for one prior prison term conviction. The information alleged that the fifth gang member had two prior prison terms, one prior serious felony conviction, and one prior serious felony strike conviction.

Defendant eventually entered into a plea bargain, wherein he agreed to plead guilty to certain charges in exchange for a state prison sentence of 18 years. At the plea

3

and sentencing hearing, the prosecutor read into the record a victim impact statement, written by a victim of one of the burglaries. The victim's statement indicated that many irreplaceable personal items had been stolen, as well as personal and financial information that had been made vulnerable. The victim and her family had worked hard to maintain an impeccable credit rating, but now her financial security and peace of mind had been "simply . . . take[n] . . . from me in the middle of the night." The victim suffered the indignity of seeing some of her stolen belongings for sale on Craig's List.

The terms of the plea bargain were that defendant would plead guilty to count 1 (June 30, 2012 burglary), count 2 (active participation in a criminal street gang), count 3 (receiving stolen property), and count 5 (July 11, 2012 burglary). The information was amended to add a strike prior allegation; the same offense for which defendant served a prior prison term (vehicle theft) qualified as a strike because defendant had committed the crime for the benefit of a criminal street gang. Defendant admitted the strike prior.

The court sentenced defendant on count 1 to the low term of two years, doubled to four years as a second strike. Defendant was sentenced to two years, concurrent, on count 2. The court imposed a consecutive term of eight months (one-third the middle term) on count 3, doubled to 16 months. The court imposed a term of one year four months (one-third the midterm), on count 5, doubled to two years eight months. The term on count 5 was to run consecutively to the term on count 1. The court imposed a gang enhancement term of 10 years in connection with count 1. The term of four years

4

on count 1, plus 10 years for the enhancement, plus 16 months on count 3, plus two years eight months on count 5, resulted in a total prison term of 18 years.

The court then proceeded to state defendant's accrued credits, impose various fees, and restitution and parole revocation fines.

As to the issue of direct victim restitution, the following proceedings took place in open court:[1]

"THE COURT:  [¶] . . . [¶]  He's also ordered to pay a restitution fine of $240—

"[THE PROSECUTOR]:  I have restitution amounts, your Honor.

"THE COURT:  —and a parole revocation fine of $240.  That latter fine will be stayed pursuant to . . . successful completion of parole.  [¶]  The defendant is ordered to pay victim restitution in the amount of?

"[THE PROSECUTOR]:  $9,676.51.

"THE DEFENDANT:  Does that include everything or—I thought I was just pleading guilty to Count 1, 3, and 5.

"[DEFENSE COUNSEL]:  I have not seen those numbers.  I don't know to which places they go because there were some . . . allegations that were never charged that

---

[1] On the plea bargain form, defendant had initialed a provision, as one of the consequences of the plea, that, "I will be ordered to pay restitution to the victim(s) if the victim(s) suffered economic harm.  I agree that the amount of victim restitution is _____ [left blank].  If the parties do not agree, the probation department will determine the amount.  If I disagree with the amount, I must promptly request a hearing."  Defendant also initialed a provision that stated:  "I agree that I will be ordered to pay restitution to the victim(s) of the dismissed charges and/or enhancements if the victim(s) suffered economic harm."  Defendant agreed to a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754), so that restitution pertaining to dismissed counts could be imposed.

involve the receiving stolen property, so I don't know what those amounts go to. The Court can put it in, but he still reserves rights, if he wants to request his hearing.

"THE COURT: Does he want to request a restitution hearing before he goes off to state prison?

"[DEFENSE COUNSEL]: If we could set a hearing, and in the meantime if I could get copies of whatever receipts you have, we can work it out at that time. I haven't seen any of the numbers.

"[THE PROSECUTOR]: Okay.

"THE COURT: Mr. Gurrola, the People are asking for that amount. I will order that amount of $9,676.51.

"THE DEFENDANT: You guys can take care of that without me being here in the County?

"THE COURT: We can if you want to waive your presence.

"THE DEFENDANT: I just want for it to be fair because I thought I'm only pleading guilty to Counts 1, 2, 3, and 5, which don't include all those other alleged, alleged charges.

"[DEFENSE COUNSEL]: I have explained to him about the *Harvey* waiver. What he is talking about is they are uncharged—some of the, the addresses and property—

"THE COURT: Uncharged on this Information.

"[DEFENSE COUNSEL]: Exactly.

6

"THE COURT:  It doesn't say that was part of the plea bargain as to any uncharged counts.  There was a *Harvey* waiver, but I'm assuming that was for the charged counts.

"[THE PROSECUTOR]:  The amount that I'm telling you is for named victims.

"[¶] . . . [¶]

"[DEFENSE COUNSEL]:  If I just get the receipts, and then if he's willing to waive his appearance, it is just basically—so I have something to put in the file to show where those amounts came from.

"THE COURT:  Mr. Gurrola, what will happen is your attorney will look at those receipts that the People have.  And if he has a concern, then he will set it for a restitution hearing, where the People will have to show how they came up with that amount of money, and then at that point you'll have the opportunity through your attorney to offer any defenses or any reasons why that shouldn't be the amount of money.  [¶]  You have the right to be brought back from state prison for that hearing.  Is that what you'd like to do, or would you like to waive your presence for that restitution hearing?

"THE DEFENDANT:  Nah.  I'd like to be brought back down.

"THE COURT:  Okay.  So, [defense counsel], I will have you take a look at those documents, talk to your client.  And if there's a hearing that needs to be set, then I will have you place it on calendar and have Mr. Gurrola transferred back.

"[DEFENSE COUNSEL]:  Okay.  Thank you, your Honor."

7

In July 2013, defendant obtained an order by writ allowing him to file a late notice of appeal. Defendant's notice of appeal, filed July 25, 2013, asserted as the ground for appeal that defense counsel had not given defendant proper advice or sufficient time to review the police reports before requiring him to elect whether or not to plead guilty.

Then, in August 2013, defendant wrote a letter to the trial court, complaining about the order for victim restitution. Defendant wrote that, "On the sentencing date there was a recommendation of $9,676.51 to be paid to the victims on all allegations. . . . The amount I believe now and then is not ac[c]urate. I brought this to your attention then and you too noticed the error. I was bambo[o]zled on the judgement [*sic*] so I would really ap[p]reciate for this direct order of restitution to be taken care of in court. You had asked for a restitution hearing and if I'd waive my presence? I rejected and asked to be made present. It was then said that I would be pulled down from the state penetentary [*sic*] to resolve this matter. Nine months have passed with no hearing nor results." (Some capitalization omitted.) On September 25, 2013, the court ordered defendant's letter filed in the record, and denied defendant's request for a hearing. In November 2013, defendant filed a new notice of appeal from the trial court's order denying his request for a restitution hearing.

The sole issues raised on appeal relate to the propriety of the order for direct restitution.

ANALYSIS

I.  Contentions

Defendant contends, first, that the order for direct victim restitution in the amount of $9,676.51 must be stricken because it was not supported by substantial evidence. Second, defendant argues that he was entitled to, but was denied, a hearing to determine the amount of victim restitution to be ordered.

The People respond that defendant forfeited the right to challenge the restitution order because he did not contest it below, and, in any case, the court was within its discretion in setting the amount of victim restitution.  As to the restitution hearing, the People assert that the right to a hearing was impliedly waived by defendant's trial counsel when he failed after sentencing to make any further request for a restitution hearing.

"The California Constitution gives crime victims a right to restitution and, consequently, requires a court to order a convicted wrongdoer to pay restitution in every case in which a crime victim suffers a loss.  (Cal. Const., art. I, § 28, subd. (b)(13)(B).) To implement this requirement, [Penal Code] section 1202.4, subdivision (f), generally provides that 'in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.' "  (*People v. Sy* (2014) 223 Cal.App.4th 44, 62.)

By statute, "The restitution amount 'shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct.' ([Pen. Code] § 1202.4, subd. (f)(3).)" (*People v. Sy*, *supra*, 223 Cal.App.4th 44, 63.) Penal Code section 1202.4 also provides that, " 'The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution.' ([Pen. Code] § 1202.4, subd. (f)(1).)" (*People v. Sy*, *supra*, 223 Cal.App.4th 44, 63.)

Generally speaking, " ' "The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" [Citation.] However, a restitution order "resting upon a ' "demonstrable error of law" ' constitutes an abuse of the court's discretion. [Citation.]" [Citation.] "In reviewing the sufficiency of the evidence [to support a factual finding], the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether

10

there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]" [Citation.] [¶] " '[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole. [Citations.]' [Citations.] 'There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26-27 [95 Cal.Rptr.3d 751].)' " (*People v. Sy*, *supra*, 223 Cal.App.4th 44, 63.)

Here, of course, there was no hearing, and that is one of defendant's complaints. A defendant has the right to a hearing to contest the amount of restitution ordered (Pen. Code, § 1202.4, subd. (f)(1)), but a defendant may forfeit the right to review a particular victim restitution order, in the absence of a hearing, by failing to object in the lower court. (See *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218 [Fourth Dist., Div. Two] ["An objection to the amount of restitution may be forfeited if not raised in the trial court"].) We turn now to a resolution of these intertwined issues.

## II. The Victim Restitution Order Was Proper

A. Background

Defendant was a member of the Old Town Trece or Vatos Trece criminal street gang. Given the number and the nature of the offenses alleged in the complaint against both defendant and a number of other members of the gang, the gang was evidently

11

involved in an extensive criminal enterprise of stealing credit cards, identification cards, social security cards, and other personal identification and financial information, which the gang then used to obtain money and property through fraud and/or identity theft. The victim impact statement of one of the burglary victims indicated that the crime affected the financial security of the victim and her family.

We observe, based on the courtroom colloquy reproduced extensively above, that the prosecutor, defense counsel, and the court were evidently aware that receipts existed to justify the amount of victim restitution ordered. Defendant had signed a *Harvey* waiver, which permitted the trial court to consider facts relating to dismissed counts (e.g., count 4, participation in a criminal street gang as of July 4, 2012, when credit cards were stolen; count 6, receiving stolen photo identification and social security cards on July 11, 2012; and count 7, active participation in a criminal street gang as of July 11, 2012) in setting defendant's sentence. However, defense counsel was concerned that some of the victims for whom victim restitution was ordered may have been neither victims in the convicted counts, nor victims in the dismissed counts, but victims of the gang's activities who were not related to any of the counts alleged in this pleading. Hence, the following exchange: "[DEFENSE COUNSEL]: I have explained to him about the *Harvey* waiver. What he is talking about is they are uncharged—some of the, the addresses and property—

"THE COURT: Uncharged on this Information.

"[DEFENSE COUNSEL]: Exactly."

12

Defense counsel stated, "*The Court can put it* [i.e., the victim restitution order] *in*, but he still reserves rights, if he wants to request his hearing."  (Italics added.)  Counsel did not object to the entry of the order for victim restitution as such.  Rather, he indicated that defendant reserved the right to request a hearing in the future, once the documents had been reviewed, if the requested amount included payment of restitution to persons who were not victims of the counts originally charged in this complaint.

B.  <u>Defense Counsel Failed to Raise an Actual Objection at the Sentencing Hearing, and Forfeited the Right to Raise the Issue on Appeal Now</u>

Defendant complains that this is not a case of forfeiture, because defense counsel, and defendant himself, timely raised the issue whether the amounts of ordered victim restitution were proper.  However, even though the issue was brought to the trial court's attention, the objection was not definitive or straightforward; rather, it was couched in conditional terms:  defense counsel objected that he had not yet reviewed the documentation supporting the victim restitution to determine whether there were any victims included who were not connected to any of the charged (either convicted or dismissed) counts in this case.  Defense counsel then invited the court to enter the victim restitution order as requested, but reserved the right to request a hearing later, *if* his review of the documentation showed there were any payees who were not victims of any of the charged counts.  The express acquiescence in the entry of the victim restitution order did not constitute an objection to the order for victim restitution.  Presumably also, defense counsel's anticipated review of the documentation took place, and counsel did

13

not discover any discrepancies in the connection of the named victims to the crimes charged in the current pleading. The absence of a request for a restitution hearing in the months following sentencing suggests that counsel was satisfied with the amount of victim restitution ordered, and was satisfied with respect to the connection of the order to proper victims of the charged counts in this case.

The issue of the correctness of the order for victim restitution was mentioned, but no direct objection stated. Rather, defense counsel conditionally reserved the right to state an objection later, if the review of the documentation was not found to support the order. Defense counsel then presumably reviewed the documentation, and failed to raise any objection at any time after the sentencing hearing. The failure to raise a timely objection in the trial court resulted in a forfeiture of the issue. (See *People v. Brasure* (2008) 42 Cal.4th 1037, 1075 [a claim that a restitution order was unwarranted by the evidence—as distinct from a claim that such order was unauthorized by statute—is forfeited by failure to object].) Defense counsel ultimately did not contest—failed to object to—the amount of the victim restitution order. The claim raised now has been forfeited by that failure to object.

C. The Right to a Hearing on the Restitution Amount Was Also Waived By Failure to Make a Timely Request

Similarly, defendant's right to a restitution hearing was implicitly waived by trial defense counsel's failure to request such a hearing in a timely manner.

14

As noted, defense counsel initially requested that a restitution hearing be scheduled on the calendar. However, he then acquiesced in the entry of the restitution order in the requested amount. The colloquy between the court and counsel indicated that actual receipts for victim losses existed, but that defense counsel had not reviewed the numbers or the association of particular amounts to payees who were the actual victims of the charged counts in the instant pleading. Counsel agreed, and the court explained to defendant expressly on the record, that the victim restitution order would be entered at once, and counsel would review the receipts and other documentation to ensure that defendant's concern—that he was being ordered to pay restitution to persons who were not victims of the current convicted and dismissed charges—would be addressed. If counsel discovered, on further review, that defendant's concerns were justified, and unauthorized payees were included in the order, then he would request a hearing on defendant's behalf. Counsel thereafter failed to make any such request for a hearing.

Defendant himself also did not request a hearing. The record indicates that defendant obtained leave to file a belated appeal in the case, some eight or nine months after his sentencing hearing, based upon representations that he was not aware he had the right to appeal after a guilty plea, and based upon circumstances at the facility where he was housed which had prevented him from learning how to file such an appeal. However, the grounds of the appeal defendant filed, after he was granted leave to file a late appeal, had nothing to do with the victim restitution order. Rather, defendant complained that his trial attorney had required him to make a decision on the plea bargain

15

without allowing him sufficient time to review and digest the case against him (police reports). Defendant claimed he was not permitted to ask questions at the change-of-plea hearing, but was required by his counsel to answer everything with a "yes" or "no."

It was only a month later, in August 2013, that defendant first broached the subject of the victim restitution order and a hearing on the amounts. Defendant's letter to the trial court asserted that he always believed the victim restitution amount was not accurate. Defendant anticipated that he would be summoned to court to attend a restitution hearing, but after nine months there had been no hearing. Defendant claimed that his trial counsel "has no desire to assist me."

Defendant recalled—correctly—that he had declined to waive his presence for any restitution hearing that would be held, but he did not accurately remember the proceedings. No restitution hearing had been set, nor had any hearing even been requested. Rather, counsel indicated that he reserved the right to request a hearing *if* his review of the receipts held by the prosecution did not support the order, most particularly with respect to the inclusion of payees who were not victims of any of the offenses charged in the operative pleading. Counsel's failure to request such a hearing, after the passage of approximately 10 months, impliedly waived the hearing. (Cf. *People v. Blankenship* (1989) 213 Cal.App.3d 992, 997, fn. 4 ["To the extent case law suggests a defendant is entitled to a hearing and proof of the losses for restitution under [Penal Code] section 1203.1 *even in the absence of a request*, [citations], we hold

that level of due process is not required for a restitution order under Government Code section 13967]".)

DISPOSITION

Defendant forfeited the right to raise the issue of victim restitution on appeal and also impliedly waived the right to request a hearing on the amount of victim restitution when defense trial counsel, after conditionally indicating that he might request such a hearing if he were not satisfied as to the evidence supporting the requested order, failed to request a hearing to challenge the victim restitution order.  The trial court's order denying defendant's request for a hearing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
Acting P. J.

We concur:


RICHLI_____
J.


MILLER_____
J.

17