Filed 4/12/22; Certified for Partial Publication 4/27/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IAN CZIRBAN,<br><br>    Defendant and Appellant. | H048989<br>(Monterey County<br>Super. Ct. No. SS170589A) |

Defendant Ian Czirban appeals from a victim restitution order imposed as a condition of probation following his conviction for several business-related crimes. Czirban's crimes came to light after a July 2016 accident that killed Robert Reagan III, while he was operating Czirban's bulldozer in aid of the California Department of Forestry and Fire Protection (Cal Fire) at a wildfire in Monterey County. A postaccident investigation revealed that Czirban did not have workers' compensation insurance.

The trial court convicted Czirban of procuring or offering a false or forged instrument, tax evasion, failure to collect, account for, or pay taxes, and misdemeanor failure to secure payment of workers' compensation insurance. The trial court suspended imposition of sentence, placed Czirban on felony probation for three years, and reserved

the issue of victim restitution. Czirban appealed the judgment of conviction to this court.[1]

While that appeal was pending, the trial court ordered Czirban to pay, as a condition of his probation, victim restitution in the amount of $70,667.56 to Morgan K., Reagan's partner and the mother of their two children.[2] Czirban now appeals that order. (Pen. Code, § 1237, subd. (b).[3])

Czirban contends the trial court improperly awarded restitution for attorney fees because the award rests on a violation of the Workers' Compensation Act (the Act) related to a survivors' benefit paid to Morgan by the State of California. Czirban further claims that the restitution award is invalid as a probation condition because the attorney fees lack a rational nexus to his misconduct, are excessive, and were unreasonably calculated. Additionally, Czirban asserts that the trial court abused its discretion in awarding interest.

For the reasons explained below, we reverse the award of $22,485.13 in interest and remand to the trial court with directions. In all other respects, the order is affirmed.

## I. FACTS AND PROCEDURAL BACKGROUND

Robert Reagan, III died on July 26, 2016, while operating Czirban's bulldozer at the Soberanes wildfire in Monterey County. Reagan was ejected from the bulldozer and

---

[1] By separate order in this case, we took judicial notice of the record in Czirban's appeal from the judgment (No. H047748). Additionally, on our own motion, we take judicial notice of our prior opinion, *People v. Czirban* (2021) 67 Cal.App.5th 1073 (*Czirban I*). (Evid. Code, §§ 452, subd. (d), 459.)

[2] To protect the privacy of the victim, we refer to her last name by its first initial. We similarly refer to her minor children by their initials. (Cal. Rules of Court, rule 8.90(b)(4).)

[3] Unspecified statutory references are to the Penal Code.

2

crushed to death by it. An investigation into Czirban's business (Czirban Concrete Construction) commenced after the accident.[4]

In May 2018, the Monterey County District Attorney charged Czirban with seven crimes related to his business conduct: insurance fraud (§ 550, subd. (b)(3); count 1), workers' compensation fraud (Ins. Code, § 11760, subd. (a); count 2), two counts of procuring and offering a false or forged instrument (§ 115, subd. (a); count 3 [occurring on or about March 15, 2016] and count 4 [occurring on or about May 2, 2014]), tax evasion (Unemp. Ins. Code, § 2117.5; count 5), failure to collect, account for, or pay taxes (§ 2118.5; count 6), and misdemeanor failure to secure payment of workers' compensation insurance (Lab. Code, § 3700.5, subd. (a); count 7).

After a court trial, the trial court convicted Czirban on counts 4 through 7 and found him not guilty on counts 2 and 3.[5]

In December 2019, the trial court suspended imposition of sentence and placed Czirban on felony probation for three years with various conditions. The court also reserved the issue of victim restitution and continued the case for a restitution hearing. Czirban appealed the judgment of conviction; this court decided that appeal in August 2021.[6] (*Czirban I, supra*, 67 Cal.App.5th at pp. 1078–1079.)

While Czirban's appeal from the judgment was pending, the trial court proceeded to address the issue of victim restitution. In January 2021, the parties stipulated that the

---

[4] We state the facts and procedural history based on the record in this appeal and our prior opinion, which sets forth more fully the trial procedure and facts of Czirban's crimes. (See *Czirban*, *supra*, 67 Cal.App.5th at pp. 1078–1086.)

[5] During trial, the court granted the district attorney's motion to dismiss count 1.

[6] In Czirban's appeal from the judgment, this court reversed the order of probation and remanded the matter for resentencing with directions to modify Czirban's term of probation in accord with current section 1203.1, subdivision (a). (*Czirban*, *supra*, 67 Cal.App.5th at pp. 1095, 1097.) We affirmed the judgment in all other respects. (*Id*. at p. 1098.)

trial court could decide the issue upon written briefs and declarations in lieu of live testimony.

In a declaration submitted by the district attorney in support of restitution, Morgan K. declared that Reagan was her "significant other" with whom she had lived before the July 2016 accident and shared two minor children, C.R. and A.R. In 2015 and 2016, Morgan and the children "were financially dependent on [Reagan's] employment income." Shortly after Reagan's death, Morgan discovered that Czirban did not have workers' compensation insurance. "Concerned about the lack of insurance benefits for A.R., C.R. and [herself], [Morgan] retained legal counsel, Thomas Tusan . . ., in approximately September 2016." Tusan filed claims on behalf of Morgan and her children with the Uninsured Employers' Benefits Trust Fund (UEBTF) "for death benefits and recovery of funeral expenses." "On or about April 8, 2020 – over 3 years and 9 months after [Reagan's] death, [Morgan] signed a Compromise and Release Agreement [(C&RA)] in the Workers' Compensation Appeals Board [(WCAB)] action *Robert Reagan Deceased v. Czirban Concrete Construction, LLC, Et Al.* (Case No. ADJ10613433)." (Italics added & underlining omitted.)

According to Morgan's declaration, under the C&RA, Morgan (as Reagan's putative spouse) and her children "were to receive a total payment of $310,218.80 for death benefits and funeral expenses, less $47,557.43 in professional fees and cost reimbursement to [her] attorney Mr. Tusan." Other documents in the record indicate that the C&RA's total settlement amount was apparently composed of $305,400.10 for death benefits, $3,613.27 for actual funeral/burial expenses, and $1,205.43 for legal costs "advanced by [Tusan,] who will be reimbursed." The C&RA did not include the attorney fees Morgan owed Tusan ($46,352). Morgan agreed that the state would pay Tusan his attorney fees directly and the settlement amount she and the children received would be reduced by the amount paid to Tusan.

4

The WCAB thereafter issued an "Order Approving Compromise and Release," based on the terms of the C&RA, and finding the settlement to be "reasonable and fair." The order specified the total amount payable to Morgan and the children, "less $1,205.43" in reimbursement for litigation costs to Morgan's attorney, and "less $46,352.00 for reasonable attorney fees." (Boldface omitted.)

Shortly after issuing the "Order Approving Compromise and Release," the WCAB issued a stay and "Notice of Intent to Approve Compromise and Release," which stated the "notice of intent to order approval of compromise and release is herewith issued," and that it would be vacated upon "a written showing of good cause within 20 days." (Some capitalization omitted.)

After the 20-day period had elapsed without any objection having been filed, the WCAB issued an "Order Reinstating Order Approving Compromise and Release" (WCAB order). The WCAB order directed the parties "to comply with the provisions of that order." (Capitalization omitted.) The service list for the WCAB order and the "Notice of Intent to Approve Compromise and Release" included multiple addresses for Czirban individually and for Czirban Concrete Construction.

In July and October 2020, Morgan received $131,330.68 from the State Compensation Insurance Fund (SCIF) (on behalf of Cal Fire) and another $131,330.68 from the UEBTF, for a total of $262,661.36. Morgan also "verified with Mr. Tusan that he ha[d] received his fees and costs of $47,557.43."

In her declaration in support of her restitution request, Morgan asked the trial court for "(a) the $625 in unpaid wages promised to [Reagan] by Mr. Czirban, (b) the $47,557.43 in attorney[] fees and costs that [she] paid to Mr. Tusan, and (c) legal interest of 10% covering the unpaid death benefits and funeral expenses ($310,218.80) - with that interest to be applied to the time frame between [Reagan]'s death on July 26, 2016 and

5

the date of the signing of the C&R[A]: April 8, 2020."[7] Morgan stated further that "but for Mr. Czirban's failure to have workers' compensation insurance, [she] would have received the death benefits within a month of [Reagan]'s death, rather than 3 years and 9 months later."

Additionally, the district attorney submitted the declaration of a Cal Fire employee, Genavina Mabary, regarding Morgan's and her children's claims and payments made by Cal Fire (through SCIF) to Morgan, her children, and Tusan. The district attorney also submitted a declaration by an employee of the California Department of Industrial Relations, Cynthia Co, regarding the claims and payments made by the UEBTF to Morgan, her children, and attorney Tusan. Co stated that the maximum available benefit under the law was $320,000. She also explained how the death benefit portion of the total lump sum benefit (i.e., $305,400.10) was calculated under statutory formulas governing a situation involving three or more dependents. The death benefit calculation used a "Weekly Disability Rate" ($416.65) that was "calculated from Reagan's reported 2015 earnings" and applied that rate to the period from Reagan's date of death through the date his youngest dependent would reach majority "and in consideration of the present value."

Mabary and Co described the process by which the C&RA was approved in 2020 by an administrative law judge of the WCAB, as summarized above, and stated that they were not aware of Czirban having disputed the C&RA or the WCAB's determination.

---

[7] We note that, although Morgan requested restitution for legal costs paid to Tusan, the record appears to indicate that the $1,205.43 in costs was included in the total settlement *in addition* to the death benefits and funeral expenses she received. That is, the $1,205.43 was not deducted from the death benefits and funeral expenses that Morgan received from the state under the settlement. Rather, the state reimbursed Tusan directly for the unpaid legal costs that he had incurred up to the time of the settlement. By contrast, the $46,352 in attorney fees that Morgan owed to Tusan was deducted from her death benefits and funeral expenses.

On appeal (with a limited exception described *post*), Czirban does not specifically challenge the inclusion of costs in the restitution order.

In the trial court, Czirban opposed Morgan's restitution request. Czirban argued that "[t]he People failed to prove a factual or legal basis for [the $47,557.43 in attorney fees and costs] because they failed to meet their burden of showing that the requested fee was reasonable." Czirban urged the trial court to use the "lodestar" method to determine the reasonableness of the attorney fees.[8] Regarding the request for interest on the $310,218.80 lump sum benefit, Czirban argued, inter alia, that "[o]rdering interest on the lump sum would amount to a prohibited windfall" because Morgan had received more money than she would have through the typical installment payments for a workers' compensation death benefit. Czirban also asserted that the district attorney "failed to present a factual basis to determine what the installment payments would have been, a fact necessary to calculate the interest accurately."

On March 26, 2021, by written order,[9] the trial court awarded a total of $70,667.56 in victim restitution payable to Morgan, comprising $625 in unpaid wages, $46,352 in attorney fees, $1,205.43 in legal costs, and $22,485.13 in interest.[10]

The court noted that the attorney fees "were approximately 15% of the total death benefit award" and the WCAB judge "specifically identifie[d] $46,352 as 'reasonable attorney fees.' " The court also stated that it was "not bound by the 'Lodestar' method so long as a rational calculation is employed." The court concluded that the attorney fees

---

[8] "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee 'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' " (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 489.)

[9] As explained *ante,* the trial court's order indicates the parties stipulated "the matter could be heard through briefing and affidavits without the necessity for in[-]court testimony."

[10] The trial court denied restitution requests by Cal Fire and the California Department of Industrial Relations for their one-half shares of the $310,218.80 payment made to Morgan and her children.

7

and costs were "reasonable and appropriate" and payment of the fees and costs by Czirban to Morgan "would serve a rehabilitative purpose" under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).

Regarding the award of interest under section 1202.4, subdivision (f)(3)(G) (hereafter section 1202.4(f)(3)(G)), the court stated that the parties "appear to have misunderstood the purpose of" that section when arguing over the requested interest for the 45-month period before the benefits settlement. The court explained that, under section 1202.4(f)(3)(G), "the principal upon which interest is calculated is the restitution order itself. And, as interest, it is designed to account for the time between the date of loss (or sentencing) to the date of the restitution order." The court set the total amount of awarded restitution as the principal (i.e., $48,182.43, for unpaid wages, attorney fees, and costs) and calculated simple interest based on that principal, at a rate of 10 percent per year, between the date of Reagan's death and the date of the present restitution order (i.e., 56 months). Using these figures, the court determined the interest due was $22,485.13.

Czirban timely appealed the restitution order.

## II. DISCUSSION

Czirban contends (1) the trial court abused its discretion by ordering him to pay attorney fees because the Labor Code explicitly prohibits the payment of attorney fees out of a survivors' benefit; (2) the order for payment of attorney fees as a condition of probation is unreasonable, irrationally calculated, and based on an erroneous legal standard; and (3) the trial court abused its discretion when determining the interest award.

A. *General Legal Principles*

"Under California law, '[c]onvicted criminals may be required to pay one or more of three types of restitution.' [Citation.] They may be required to pay a restitution fine into the state Restitution Fund, to pay restitution directly to the victim, or to pay restitution as a condition of probation. The statutory requirements vary depending on the

8

type of restitution at issue." (*People v. Martinez* (2017) 2 Cal.5th 1093, 1100 (*Martinez*).)

Restitution as a condition of probation is expressly authorized by section 1203.1. (See *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 (*Carbajal*); § 1203.1, subds. (a)(3), (b).) Section 1203.1 "gives trial courts broad discretion to impose probation conditions to foster rehabilitation and to protect public safety. [Citation.] The court may impose upon probationers 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer.' " (*People v. Anderson* (2010) 50 Cal.4th 19, 26 (*Anderson*), quoting § 1203.1, subd. (j).)

"[U]nder section 1203.1, 'California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction.' [Citation.] As [our Supreme Court] explained: 'Under certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]. There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action.' " (*Anderson*, *supra*, 50 Cal.4th at p. 27.)

Additionally, trial courts have authority to impose direct victim restitution under section 1202.4. (See *People v. Giordano* (2007) 42 Cal.4th 644, 651–652 (*Giordano*).) That section "authorizes trial courts to order direct victim restitution for those losses incurred as a result of the crime of which the defendant was convicted." (*Martinez*, *supra*, 2 Cal.5th at p. 1101.) "In both sections 1203.1 and 1202.4, restitution serves the purposes of both criminal rehabilitation and victim compensation. But the statutory

9

schemes treat those goals differently. When section 1202.4 imposes its mandatory requirements in favor of a victim's right to restitution, the statute is explicit and narrow. When section 1203.1 provides the court with discretion to achieve a defendant's reformation, its ambit is necessarily broader, allowing a sentencing court the flexibility to encourage a defendant's reformation as the circumstances of his or her case require." (*Anderson*, *supra*, 50 Cal.4th at p. 29; see also *Martinez*, *supra*, 2 Cal.5th at p. 1101.)

We review conditions of probation for abuse of discretion. (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) A reviewing court will not strike a probation condition as unreasonable under section 1203.1 unless it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*), quoting *Lent*, *supra*, 15 Cal.3d at p. 486.) "The *Lent* test 'is conjunctive — all three prongs must be satisfied before a reviewing court will invalidate a probation term.' " (*Ricardo P.*, at p. 1118.) Furthermore, "[t]he trial court's discretion under section 1203.1, 'although broad, nevertheless is not without limits; a condition of probation must serve a purpose specified in the statute.' [Citations.] [¶] We determine whether the restitution order, as a condition of probation, is arbitrary or capricious or otherwise exceeds the bounds of reason under the circumstances." (*Anderson*, *supra*, 50 Cal.4th at pp. 31–32.)

Similarly, a direct victim restitution order "is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. [Citation.] No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. '[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.' . . . Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim."

10

(*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542–1543; see also *Giordano*, *supra*, 42 Cal.4th at p. 665.)

We consider questions of statutory interpretation de novo.  (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)  " ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." ' " ' " (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.)

B.  *Violation of Workers' Compensation Act*

Czirban contends that the trial court abused its discretion by ordering payment of attorney fees as restitution because "the Legislature explicitly prohibits the payment of attorney[] fees out of survivor benefits."  Czirban maintains that, under Labor Code section 4555, the WCAB should have awarded Morgan K. her attorney fees *in addition* to the survivors' benefit.  Czirban contends the trial court's restitution order for the amount of Morgan's attorney fees rests on an erroneous application of the Workers' Compensation Act (Lab. Code, § 3200 et seq.).

Czirban asserts that Morgan has the "right" to the full amount of survivors' benefits.  He contends this court should vacate the order of restitution and set aside the WCAB order deducting attorney fees "with directions to pay" Morgan "her full benefit" (which would presumably eliminate Morgan's economic loss).  Czirban further argues that although he did not object to the restitution order on the specific statutory ground he asserts here, the issue is not forfeited because (1) the relevant provisions of the Labor Code restricted Czirban's ability to seek review of the WCAB order until the trial court

11

imposed the victim restitution order, and (2) this court has inherent authority to review the imposition of an unauthorized sentence.

The Attorney General does not address or directly respond to Czirban's contention that the C&RA and resulting WCAB order contravened Labor Code section 4555 by deducting the payment of attorney fees from a survivors' benefit. Instead, the Attorney General counters that Czirban's claim fails because this court does not have jurisdiction to reconsider or set aside the WCAB order, which Czirban could have but did not challenge in the WCAB action. The Attorney General argues that even if this court has jurisdiction to correct error under the unauthorized sentence exception to the forfeiture doctrine, we may not "unilaterally rewrite the terms of the C&RA" which are determinative of the rights of the parties to the agreement.

### 1. Standards of Review

While an order of victim restitution is typically reviewed for abuse of discretion, in accordance with the legal principles articulated above (part II.A., *ante*), a restitution order that is "not authorized by governing law" or which rests upon a " ' " ' " 'demonstrable error of law' " constitutes an abuse of the court's discretion.' " ' " (*People v. Brunette* (2011) 194 Cal.App.4th 268, 276 (*Brunette*).) Where, as here, the "propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146 (*Williams*).) Accordingly, we independently review the legal basis for the restitution award to the extent it is derived from an attorney fees award under the Workers' Compensation Act. (*Brunette*, at p. 277 [applying "independent review to the legality of the restitution award in light of the applicable statutes"].) Furthermore, we independently review questions regarding our own jurisdiction. (*Kirk v. Ratner* (2022) 74 Cal.App.5th 1052, 1060, citing *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 252.)

12

## 2. Workers' Compensation Act

"The California Constitution confers on the Legislature 'plenary power, unlimited by any provision of this Constitution,' to establish a system of workers' compensation. (Cal. Const., art. XIV, § 4.)" (*Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1037 (*Greener*).) The Workers' Compensation Act is a "comprehensive statutory scheme governing compensation given to employees for injuries sustained in the course and scope of their employment. ([Lab. Code,] § 3200 et seq.)" (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 491 (*Koszdin*).) The right to workers' compensation benefits " 'is wholly statutory and is not derived from common law.' " (*Ibid.*) So, too, " '[t]he right to receive attorney fee awards for securing compensation on behalf of workers is also within the broad authority vested in the Legislature over the complete workers' compensation system.' " (*Ibid.*)

Pursuant to its constitutional authority, the Legislature has conferred rulemaking and adjudicatory powers on the WCAB. (*Greener*, *supra*, 6 Cal.4th at p. 1038.) This delegation includes exclusive jurisdiction of the WCAB over attorney fees associated with workers' compensation actions. (See *Id*., at pp. 1038–1039; Lab. Code, § 5300, subd. (a).) Proceedings that concern the right to attorney fees, and whether they may be deducted from the award of benefits or awarded in addition to the benefits, as Czirban contends, are thus properly "instituted solely before the Appeals Board [the WCAB]." (*Greener*, at p. 1039.)

The Legislature also has plenary power to "fix and control" "the manner of review of decisions rendered by" the WCAB, "provided [] that all decisions of any such tribunal shall be subject to review by the appellate courts of this State." (Cal. Const., art. XIV, § 4; see *Lantz v. Workers' Comp. Appeals Bd.* (2014) 226 Cal.App.4th 298, 311–312.) In accordance with its constitutional authority, the Legislature has limited the scope of judicial review of WCAB decisions (see Lab. Code, §§ 5952, 5953) as well as the procedural mechanisms for review. Labor Code section 5955 confers jurisdiction upon

13

only "the Supreme Court and the courts of appeal" to review WCAB decisions.[11]  (Lab. Code, § 5955.)  By restricting judicial review of the WCAB decision in this manner, " ' "the Legislature has carried out the declared policy of the constitutional provision that the [WCAB] be unencumbered by any but proceedings in the appellate courts." ' " (*Barri v. Workers' Comp. Appeals Bd.* (2018) 28 Cal.App.5th 428, 436.)

The California Supreme Court in *Greener* examined the process established by the Legislature for review of an order, decision, or award of the WCAB.  It explained that Labor Code section 5955 "is part of the legislatively established system for review of *orders*, *decisions*, and *awards* of the [WCAB] or a workers' compensation judge when the orders, decisions, and awards are made under provisions of the workers' compensation law.  They are reviewable by the [WCAB] on petition for reconsideration. ([Lab. Code,] § 5900.)" (*Greener*, *supra*, 6 Cal.4th at p. 1040.)  Citing Labor Code section 5901, which we consider in more detail in our discussions of jurisdiction and forfeiture (see part II.B.3, 4, *post*), the high court confirmed that "[n]o cause of action arising out of such orders, decisions, and awards, other than authorized enforcement actions, may accrue in any court unless a petition for reconsideration has been made and granted or denied by the [WCAB]." (*Greener*, at p. 1040.)  However, the court explained that after seeking reconsideration, "a person affected by the order of the [WCAB] may seek review of that order, decision or award" in the courts of appeal or California Supreme Court.  (*Ibid.*, citing Lab. Code, § 5950.)

We turn to the application of these provisions to the circumstances of this case.

---

[11] The statute states, "No court of this state, except the Supreme Court and the courts of appeal to the extent herein specified, has jurisdiction to review, reverse, correct, or annul any order, rule, decision, or award of the [workers' compensation] appeals board, or to suspend or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the appeals board in the performance of its duties but a writ of mandate shall lie from the Supreme Court or a court of appeal in all proper cases." (Lab. Code, § 5955.)

14

3.  Jurisdiction

The Attorney General asserts that Czirban is not entitled to the remedy he seeks because this court lacks jurisdiction to compel the WCAB to set aside its order approving the C&RA.  Czirban rejoins that this court has jurisdiction to review not only the order of the trial court but also the decisions of the WCAB.  As we explain, neither side is entirely correct.  While this court has fundamental jurisdiction to review the restitution order and also has jurisdiction, under certain conditions, to review orders of the WCAB (Lab. Code, § 5955), our authority over WCAB orders is constrained by and subject to specific statutory mechanisms for review.

We begin by noting that the parties use the umbrella term "jurisdiction" to connote two different types of authority—in this case, authority over the trial court's restitution order and authority to set aside a decision of the WCAB pursuant to the Workers' Compensation Act.

There are "two different ways in which a court may lack jurisdiction."  (*People v. Ford* (2015) 61 Cal.4th 282, 286 (*Ford*).)  First, "[a] court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case."  (*Ford*, *supra*, 61 Cal.4th at p. 286.)  A ruling by a court that lacks such "fundamental" jurisdiction is void.  (*Ibid.*)  Moreover, "[a] claim based on a lack of fundamental jurisdiction may be raised for the first time on appeal."  (*Ibid.*)

Second, there are circumstances in which a court has fundamental jurisdiction but authority of only a limited scope.  "Even when a court has fundamental jurisdiction, [] the Constitution, a statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations."  (*Ford*, *supra*, 61 Cal.4th at pp. 286–287.)  By way of an example provided by the high court in *Ford*, "a court with fundamental jurisdiction over the parties nonetheless lack[s] the power to enter a judgment forfeiting a bail bond prior to the end of the period allowed for the surety to

15

make an appearance. When a trial court has fundamental jurisdiction but fails to act in the manner prescribed, it is said to have acted 'in excess of its jurisdiction.' " (*Id.* at p. 287.) A ruling "in excess of jurisdiction does not negate a court's fundamental jurisdiction to hear the matter altogether" and "is treated as valid until set aside." (*Ibid.*)

Applying those principles here, we note that the trial court's "order of restitution was appealable, as it was made after judgment and affected [the] defendant's substantial rights." (*Ford*, *supra*, 61 Cal.4th at p. 286; see *People v. Vournazos* (1988) 198 Cal.App.3d 948, 953; § 1237, subd. (b).) This court therefore has fundamental jurisdiction over—meaning the power to review—the restitution order.

The Attorney General is nevertheless correct that, even if we were to agree with Czirban's legal argument that the restitution order is premised on a legally improper order by the WCAB, we are unable in this appeal to correct any such purported error in the manner requested by Czirban, i.e., by "set[ting] aside the WCAB's order deducting [Morgan]'s attorneys fees from her survivors' benefit."

As described above (part II.B.2, *ante*), the WCAB derives its jurisdiction and scope of authority from the state Constitution (Cal. Const., art. XIV, § 4) and the Workers' Compensation Act. The Act declares that "[a]ll orders, rules, findings, decisions, and awards" of the WCAB are "conclusively presumed to be reasonable and lawful, until and unless they are modified or set aside by the [WCAB] or upon a review by the courts within the time and in the manner specified in this division." (Lab. Code, § 5302.) Judicial review of a WCAB decision is available in a Court of Appeal only pursuant to the statutory process set forth in the Workers' Compensation Act.

Czirban appears to suggest that because this court's jurisdiction over WCAB decisions "is both codified in the Labor Code and is well settled in case law," we have unlimited authority to review the WCAB's order—in this case the order approving the C&RA and ordering the payment of Morgan's attorney fees out of her settlement of

16

benefits. However, Czirban fails to address the limits set out in Labor Code sections 5955 and 5901 to this court's authority.

Labor Code section 5901[12] requires the filing of "a petition for reconsideration" in the WCAB action as a prerequisite to a party seeking to challenge a final order or decision of the WCAB. (See also Lab. Code, § 5900.) Co's declaration describing the WCAB's approval of the C&RA in 2020 and the relevant attachments demonstrate that notice of the WCAB's intent to approve the C&RA was served on the parties to the WCAB action (including Czirban) prior to the final WCAB order approving the C&RA. Thereafter, in September 2020, the UEBTF sent a letter informing Czirban, pursuant to Labor Code section 3717, of the WCAB order and award, his liability for the sum awarded (directly payable to the UEBTF), and that the remedies against him included civil litigation and non-judicial foreclosure against any real property he might own.[13] The letter further stated, "If you wish to contest the award, a petition for reconsideration must be filed with the WCAB within the time limit prescribed by law." Co and Mabary both declared they were not aware of Czirban having disputed the C&RA or the WCAB's determination by filing a petition for reconsideration.

Because he could have filed a petition for reconsideration challenging the WCAB's order approving the C&RA, we reject Czirban's unsupported assertion that "the only vehicle available to [him] for challenging the WCAB's deduction for attorney[] fees

___

[12] The statute states in relevant part, "No cause of action arising out of any final order, decision or award made and filed by the appeals board . . . shall accrue in any court to any person until and unless . . . the person files a petition for reconsideration, and the reconsideration is granted or denied." (Lab. Code, § 5901.)

[13] Under the Workers' Compensation Act, where, as here, there is an action for compensation before the WCAB, brought by the dependents of an employee whose employer failed to secure payment of workers' compensation, that action "may be resolved . . . by compromise and release . . . as long as the [WCAB] has acquired jurisdiction over the employer and the employer has been given notice and an opportunity to object." (Lab. Code, § 3715, subd. (e).)

is to first obtain a ruling from this Court on direct appeal." Furthermore, because an approved compromise and release "constitute[s] a liquidated claim for damages" which may be pursued by the UEBTF in a civil action against the employer (Lab. Cod, § 3717, subd. (a)), we disagree with Czirban's assertion that his interest in the matter at that point was merely hypothetical and he lacked standing to file a petition for writ of mandate. (Cf. *Chorn v. Workers' Comp. Appeals Bd.* (2016) 245 Cal.App.4th 1370, 1382 [" 'As a general rule, a party must be "beneficially interested" to seek a writ of mandate. (Code Civ. Proc., § 1086.)' "].)

Labor Code section 5955 restricts judicial review of WCAB orders to the courts of appeal or the Supreme Court and authorizes a writ of mandate to issue from those courts "in all proper cases." (Lab. Code, § 5955.) While Czirban is thus correct that he could not have challenged the legality of the underlying WCAB order *in the trial court* due to the jurisdictional limits stated in Labor Code section 5955 (see *Greener*, *supra*, 6 Cal.4th at p. 1044; *Koszdin*, *supra*, 186 Cal.App.4th at p. 491), he could have filed a petition for reconsideration or sought relief via a petition for writ of review in the Court of Appeal (Lab. Code, § 5955).

Czirban has neither filed a writ petition in this court, nor suggested how this appeal might be a "proper case[]" (*Greener*, *supra*, 6 Cal.4th at p. 1044) for extraordinary relief. (*Ibid.* [deciding that mandate relief may be available pursuant to Lab. Code, § 5955 "if plaintiffs are able to satisfy the court in a properly presented petition that the criteria for relief by extraordinary relief under Code of Civil Procedure section 1085 have been met"].) Therefore, we agree with the Attorney General that Czirban has not established that this court has the authority in this appeal to set aside the WCAB order.

For these reasons, we conclude that this court's jurisdiction over the restitution order issued in the criminal case does not provide this court with authority to review the WCAB's order approving the deduction of attorney fees from the C&RA settlement.

18

Nevertheless, because this court does have jurisdiction over the trial court's restitution order, we will assess the merits of Czirban's challenges to it.

### 4. Attorney Fees as Economic Loss

Czirban argues that by ordering payment of the attorney fees as victim restitution, the trial court contravened both the policy and provisions of the Workers' Compensation Act. He contends the Act required the award of attorney fees to be *added to* the benefit paid to Morgan, rather than deducted from it. Czirban asserts that ,absent the unauthorized deduction of attorney fees from Morgan's survivors' benefit, she did not suffer any economic loss that is compensable as restitution under section 1202.4.[14]

The Attorney General, having asserted that this court has no jurisdiction to set aside the WCAB order, does not address whether the restitution order contravenes Labor Code section 4555 but maintains that even if this court were to reach the merits of Czirban's argument, this court has no authority to alter the terms of the C&RA arrived at in a separate proceeding by the parties to that agreement.

We note, as an initial matter, that Czirban acknowledges he did not object to the restitution order on the statutory ground he asserts here. As we discuss further below (see part II.D., *post*), a party's failure to object in the trial court may preclude that party from raising the claim of error on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 352 (*Scott*); see *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1214 (*Garcia*).) Even so, we decide the issue is not forfeited on appeal. "[A]n objection may be raised for the first time on appeal where it concerns an 'unauthorized' sentence, i.e., one that 'could not lawfully be imposed under any circumstance in the particular case.' " (*People v. Percelle* (2005) 126 Cal.App.4th 164, 179 (*Percelle*).)

---

[14] Although Czirban refers to the compensable restitution paid as "direct victim restitution" under section 1202.4, the trial court in this matter ordered restitution for attorney fees and costs as a condition of probation pursuant to section 1203.1.

19

Czirban's argument that the trial court abused its discretion by ordering a restitution order based upon a statutorily prohibited attorney fee award is a purely legal issue appropriate for consideration in the first instance on appeal. (*Scott*, *supra*, 9 Cal.4th at p. 354.) Nevertheless, for the reasons explained above, the procedural posture of this case does not afford this court authority to review the merits of the order issued by the WCAB approving the C&RA. Therefore, we must presume the WCAB order and deduction and payment of attorney fees from Morgan's survivors' benefit was both "reasonable and lawful." (Lab. Code, § 5302.) Consequently, the scope of our review of Czirban's challenge is limited to whether the trial court abused its discretion in ordering restitution for the amount of attorney fees that had been deducted from Morgan's survivors' benefit under the WCAB order.[15]

Czirban's sole argument in this respect is that, but for the allegedly unauthorized deduction of attorney fees from Morgan's survivors' benefit, there would be no "economic loss" compensable as restitution. Since we must "conclusively presume[]" the deduction of attorney fees was, in fact, "reasonable and lawful" (Lab. Code, § 5302), we consider only whether the trial court had the authority to include these attorney fees in the restitution order.[16]

As set forth above (see part II.A., *ante*), section 1203.1 affords trial courts broad discretion to impose probation conditions such as are " 'fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer. . . .' (§ 1203.1, subd. (j).)"

---

[15] Because Czirban's claim on appeal regarding the WCAB order does not challenge the trial court's authority to include Tusan's legal costs in the restitution order, we confine our analysis to the order's inclusion of attorney fees.

[16] Because we lack the authority to consider the merits of the WCAB order, Czirban's policy arguments concerning the need to protect Morgan's "right to full survivors' benefits" to fulfill the purposes of the workers' compensation scheme are irrelevant to our analysis.

(*Anderson*, *supra*, 50 Cal.4th at p. 26.)  The Supreme Court in *Anderson* explained that California courts have long interpreted a trial court's discretion under section 1203.1 " 'to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction.' " (*Anderson*, at p. 27.)  Notably, for purposes of our review here, " '[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*Ibid.*)

The trial court analyzed Morgan's restitution claim "in light of the broader probation goal of rehabilitation," consistent with statutory and case authority.  As the trial court noted, pursuant to the WCAB's order approving the C&RA, the parties to the WCAB action deducted $46,352 in attorney fees from the total survivors' benefit to pay Morgan's attorney fees.  There is no question the deduction to pay attorney fees diminished Morgan's recovery of benefits to which she otherwise would be entitled.

The restitution order requiring Czirban to pay restitution for the amount of attorney fees which Morgan and the children did not receive from the C&RA settlement served both to "compensate the victim of a crime" for the reduction in benefits otherwise owed to them under the workers' compensation scheme and to achieve "the broader probationary goal of rehabilitating the defendant." (*Anderson*, *supra*, 50 Cal.4th at p. 27.)  Therefore, it fell within the trial court's authority under section 1203.1.  Consequently, we reject Czirban's contention that the trial court lacked the statutory authority to order restitution for the amount by which Morgan's settlement was reduced for the payment of her attorney fees.

We turn next to Czirban's alternative contentions that the trial court abused its discretion by ordering restitution for attorney fees, including under the principles of *Lent*, *supra*, 15 Cal.3d 481 and section 1202.4.

21

C. *Restitution for Attorney Fees*

Czirban contends the trial court generally abused its discretion by ordering the payment of attorney fees because they lack a nexus to his misconduct, do not serve a rehabilitative or deterrent purpose, and are excessive.[17]  Czirban's arguments are grounded on the *Lent* test, as well as section 1202.4, subdivision (f)(3)(H) and *Martinez, supra*, 2 Cal.5th 1093.

The Attorney General counters that Czirban forfeited his claim of error by failing to object at trial on the grounds he states on appeal and that Czirban's claim otherwise lacks merit.

We agree that Czirban's current contentions were not properly preserved for our review.  "An obvious legal error at sentencing that is 'correctable without referring to factual findings in the record or remanding for further findings' is not subject to forfeiture." (*In re Sheena K.* (2007) 40 Cal.4th 875, 887.)  However, a failure to object to a probation condition as unreasonable under *Lent* forfeits the right to challenge the condition on that ground on appeal.  (*People v. Welch* (1993) 5 Cal.4th 228, 237; *Sheena K.*, at pp. 881–882; *People v. Moran* (2016) 1 Cal.5th 398, 404, fn. 7.)  Similarly, the failure to object to the amount or the manner of payment of direct restitution under section 1202.4 forfeits the issue for appeal.  (*People v. White* (1997) 55 Cal.App.4th 914, 917.)

We are not persuaded by Czirban that his trial court objection on the ground that the district attorney failed to establish Morgan's factual or legal entitlement to the attorney fees "because there is no evidence that the fees were reasonable" (boldface omitted) adequately preserved his appellate contentions.  Czirban's argument in the trial court challenged the evidentiary support for the requested attorney fees.  That objection differs materially from Czirban's current arguments that the award of attorney fees as a

---

[17] We note that Czirban's *Lent*-based argument does mention the award of legal costs as well as attorney fees.

condition of probation is invalid under *Lent* or violative of section 1202.4 because it is untethered to his wrongful conduct. These arguments also do not involve obvious legal error that is excepted from the forfeiture doctrine.

Moreover, we are not convinced by Czirban's further argument that his claim of error is not forfeited because it asserts a deprivation of his constitutional due process rights, in that his probation was conditioned on an award exceeding that which is authorized under section 1202.4 "for losses rationally caused by the defendant's conduct and in an amount that is both actually incurred and reasonable."

We reject Czirban's constitutionally based argument against forfeiture on a number of grounds. First, a constitutional right may be forfeited by the failure to make a timely assertion of the right. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 856 (*Trujillo*).) Here, Czirban's failure to challenge the award of attorney fees and costs as violative of due process or a constitutionally excessive punishment forfeited any such challenge on appeal. (See *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153; *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247; *People v. Johnson* (2013) 221 Cal.App.4th 623, 636.) Second, Czirban's argument that the trial court violated section 1202.4 and, in turn, violated his due process rights does not render the forfeiture doctrine inapplicable to his separate *Lent*-based challenge to the attorney fees.

"*Lent* is an interpretation of the Legislature's requirement [in section 1203.1] that probation conditions be 'reasonable.' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1128.) As explained above, victim restitution ordered as a condition of probation is distinct from direct victim restitution under section 1202.4. (See *Martinez*, *supra*, 2 Cal.5th at pp. 1101–1102.) Given the difference between these two types of victim restitution, an argument premised on a violation of section 1202.4 does not preserve a distinct challenge based on a violation of section 1203.1. (See *Trujillo*, *supra*, 60 Cal.4th at p. 856; *Scott*, *supra*, 9 Cal.4th at p. 352, fn. 15.)

23

Finally, section 1202.4 is inapposite here because the attorney fees were awarded by the trial court "under the broader, discretionary authority of section 1203.1" (*Anderson*, *supra*, 50 Cal.4th at p. 31), not under section 1202.4. Because there could be no violation of section 1202.4 here, there can be no due process violation premised on an allegedly unauthorized restitution award under section 1202.4. Additionally, because *Martinez* concerns the propriety of direct victim restitution under section 1202.4 (see *Martinez*, *supra*, 2 Cal.5th at p. 1102), that decision does not support Czirban's argument that his current claim is cognizable in this appeal. (See *People v. Baker* (2021) 10 Cal.5th 1044, 1109.)

For these reasons, we conclude that Czirban has forfeited his current claim that the trial court's order directing payment of attorney fees and costs is unreasonable under *Lent*, excessive, or unauthorized under section 1202.4 and our Supreme Court's holding in *Martinez*. We thus do not address the merits of Czirban's arguments and instead turn to his next assertion of error, which challenges the amount of the attorney fees ordered payable in restitution.

Czirban contends the trial court abused its discretion by finding the attorney fees were reasonable for a contingent fee in civil litigation (as opposed to a workers' compensation case) and by failing to make its own determination about whether the attorney fees were reasonable. He asserts that the trial court improperly deferred to "the WCAB's approval of the fee as reasonable, even though the fee was excessive under the WCAB's own standard." The Attorney General responds that Czirban's claim is unpreserved and meritless.

As mentioned *ante*, at trial, Czirban objected to the award of attorney fees on the ground that "[t]here is not a sufficient factual or rational basis for the attorney fee request, as a prima facie case is lacking and the People have not established that the fees were reasonable" (italics omitted) in relation to the amount of work performed. In addition, Czirban urged the trial court to "begin with the lodestar calculation and then make

24

adjustments upward or downward based on relevant factors, including whether there is a contingency fee agreement."

On appeal, Czirban maintains that workers' compensation cases are distinct from "a civil proceeding." He also describes the WCAB's guidelines for attorney fees in workers' compensation cases, which allegedly limit attorney fees to a maximum of 15 percent for "very complex cases." Czirban asserts that his trial counsel's argument that the requested attorney fees were "unreasonable unless supported by substantial evidence [] appears also to reflect the policy of the WCAB" and, "[g]iven the contradiction with the WCAB policy manual, the trial court abused its discretion when it failed to address [Czirban]'s claim that the amount is unreasonable."

We are not persuaded that Czirban's appellate challenge to the trial court's order for an alleged misapplication of the correct legal standard regarding the award of attorney fees was preserved for our review. Czirban did not argue in the trial court that it had to follow the attorney fees policy of the WCAB and, if the court did not do so, it would contravene the applicable legal standard. In this court, Czirban invokes an alleged legal standard that is different from that the trial court was asked to apply and claims the trial court abused its discretion by failing to apply the unasserted standard.

Generally, "[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435.) Under these circumstances, we decide that Czirban's current contention that the trial court erred by failing to follow WCAB policy when it ordered attorney fees is forfeited.

In any event, even assuming that Czirban's contention asserts a legal error that is correctable on appeal without reference to the factual findings in the record, it lacks merit. The trial court here cited and applied section 1203.1, *Lent*, *Carbajal*, and *Anderson* in its written order, all of which set forth the proper standard for determining whether a probation condition ordering restitution may be imposed. That the WCAB has a policy manual with guidelines for the fixing of attorney fees does not supplant the

25

statutory framework governing a court's imposition of conditions of probation in a criminal case. (See *People v. Akins* (2005) 128 Cal.App.4th 1376, 1387.) Indeed, Czirban appears to concede as much by stating, "the WCAB's regulations do not bind the trial court." For these reasons, we conclude the trial court applied the correct legal standard when it found the attorney fees were reasonable.

We turn next to Czirban's further argument that the trial court abused its discretion "when it deferred to the WCAB's approval of the attorney fee[s] as reasonable" (boldface omitted). Even assuming this argument is preserved for appellate review, it lacks merit. The record demonstrates that the trial court made its own determination regarding the amount of attorney fees it would award and the reasonableness of that amount. The trial court explained that the attorney fees were about 15 percent of the lump sum benefit provided to Morgan and her children and noted it was not bound by the lodestar method, "so long as a rational calculation is employed." The court also found the attorney fees were "much lower than commonly assessed in contingency fee agreements and [] well within the realm of reasonable fees." That the court mentioned the reasonableness assessment conducted by the WCAB judge does not support Czirban's contention that the trial court improperly ceded its discretion to determine the amount of reasonable attorney fees. Viewing the record in whole, the trial court made an independent determination about the attorney fees grounded on its own assessment of the circumstances in this case.

Further, we decide that neither the trial court's decision to award attorney fees nor the amount of attorney fees it deemed reasonable was arbitrary, capricious, or outside the bounds of reason. There was no dispute that Morgan paid $46,352 out of her benefits settlement to Tusan for his attorney fees. The WCAB judge had endorsed the attorney fees as reasonable in the workers' compensation context, and it was reasonable for the trial court to credit that assessment. (See Lab. Code, § 5302.) Moreover, Czirban essentially concedes the reasonableness of the $46,352 attorney fees when he notes in his briefing that "current cases routinely award 15% of the compensation for attorney[] fees."

26

(See, e.g., *Hernandez v. Workers' Comp. Appeals Bd.* (2016) 2 Cal.App.5th 549, 559.) Under these circumstances, we discern no abuse of discretion by the trial court when it included the previously paid attorney fees in its restitution order attendant to Czirban's probation.

     D. *Interest Award*

     In its restitution order, the trial court ordered Czirban to pay Morgan $22,485.13 in interest. The trial court calculated that figure based on $46,352 in attorney fees, $1,205.43 in costs, and $625 in unpaid wages that Czirban had promised to Reagan.

     Czirban contends the trial court abused its discretion by ordering him to pay interest on the attorney fees because Morgan had not personally paid any money to her attorney before she entered the C&RA in 2020, which resulted in the payment made to her attorney by the Sate of California. Czirban asserts that the trial court failed to "make a judicial determination of compensable interest, as required by section 1202.4" and that its order of interest is not supported by substantial evidence. He further contends that because the lump sum benefit was "adjusted for present value," any interest on the attorney fees covering the same time period would be redundant and an impermissible windfall.

     The Attorney General counters that Czirban forfeited his current arguments by failing to object on those grounds in the trial court. The Attorney General also maintains that Czirban's arguments are meritless because the award of interest was not duplicative and was supported by substantial evidence.

     We again begin our analysis of Czirban's claim by addressing forfeiture. Generally speaking, "[a]n objection to the amount of restitution may be forfeited if not raised in the trial court." (*Garcia*, *supra*, 185 Cal.App.4th at p. 1218; see also *People v. Brasure* (2008) 42 Cal.4th 1037, 1075.) However, as stated above, "an objection may be raised for the first time on appeal where it concerns an 'unauthorized' sentence, i.e., one that 'could not lawfully be imposed under any circumstance in the particular case.' "

27

(*Percelle*, *supra*, 126 Cal.App.4th at p. 179; see also *In re G.C.* (2020) 8 Cal.5th 1119, 1130.) Here, Czirban's appellate claim asserts a purely legal issue that focuses on the statutory requirements of section 1202.4(f)(3)(G). He argues that the trial court could not award interest on the attorney fees accruing as of the date of Reagan's death in 2016, because the statute requires an economic loss and Morgan did not incur a loss with regard to attorney fees and costs until 2020. As there are no facts in dispute with respect to this issue, we decline to apply the forfeiture doctrine.

Turning to the merits of Czirban's claim, section 1202.4(f)(3)(G) provides that restitution for economic losses caused by criminal conduct may include "[i]nterest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court."[18] (§ 1202.4(f)(3)(G).) Generally speaking, "[t]he goal of direct restitution is to restore the victim to 'the economic status quo.' [Citation.] 'A restitution order is intended to compensate the victim for its actual loss and is not intended to provide the victim with a windfall.' " (*People v. Sharpe* (2017) 10 Cal.App.5th 741, 746; see also *In re S.E.* (2020) 46 Cal.App.5th 795, 809–810.) "Although a trial court's 'allocation of restitutionary responsibility' is reviewed for an abuse of discretion, an order resting upon a ' "demonstrable error of law" ' constitutes an

---

**18** More fully stated, section 1202.4 provides in relevant part: "(f) Except as provided in subdivisions (p) and (q), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (G) Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court."

abuse of the court's discretion." (*People v. Jennings* (2005) 128 Cal.App.4th 42, 49; see also *Brunette*, *supra*, 194 Cal.App.4th at p. 276.) To decide whether an error of law occurred, we interpret section 1202.4 de novo. (See *Williams*, *supra*, 184 Cal.App.4th at p. 146.)

Under the plain meaning of section 1202.4(f)(3)(G), interest may begin to accrue on an economic loss only on the date the victim actually incurs that loss, or on the date of sentencing. In the present case, the date of Reagan's death (July 26, 2016) is the date of economic loss for the $625 in unpaid wages. However, the record establishes that Tusan was not paid any attorney fees for his work for Morgan until about four years after Reagan's death. Further, the record indicates that Tusan bore the legal costs up to the 2020 settlement date and was reimbursed by the state (not Morgan) for the costs he incurred.

According to the district attorney's declarants, Mabary and Co, Cal Fire and the UEBTF paid Tusan his attorney fees and costs on or about July 14, 2020, and October 1, 2020, respectively, with funds from the lump sum settlement. Tusan's attorney fees were deducted from Morgan's survivors' benefit before that benefit was paid to her. It is not clear from the record whether Tusan's costs were treated in a similar way (i.e., whether they were deducted from Morgan's survivors' benefit or added to it), but the record establishes that Tusan was not reimbursed for his costs until 2020.

Because the earliest date Morgan could have incurred an economic loss for either the fees or costs was 2020 (not at the time of Reagan's death), the trial court committed an error of law when it aggregated the unpaid wages, attorney fees, and costs and calculated interest using a loss date of Reagan's death for all three categories. Although we conclude that the trial court did not err in setting the loss date for the unpaid wages as the date of Reagan's death, to ensure the accuracy of the interest award we vacate the entire interest award and order the trial court to separately recalculate the interest owed on any economic loss incurred by Morgan on the wages, attorney fees, and costs.

Accordingly, we remand the matter to the trial court to recalculate the interest award, consistent with this opinion and section 1202.4(f)(3)(G).  For the economic loss for the $625 in unpaid wages, the interest should accrue from the date of Reagan's death (July 26, 2016).  For attorney fees and costs, the trial court should accrue the interest either from "the date of sentencing" or the date of any economic loss incurred by Morgan.

### III.  DISPOSITION

The trial court's March 26, 2021 restitution order is reversed as to the award of $22,485.13 in interest.  We remand the matter to the trial court to recalculate the interest award consistent with this opinion.  In all other respects, the order is affirmed.

_____

Danner, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Wilson, J.

**H048989**
*People v. Czirban*

31

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H048989 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS170589A) |
| v. | |
| IAN CZIRBAN, | |
| Defendant and Appellant. | |

BY THE COURT:

The opinion in this case filed April 12, 2022, was not certified for publication. After the court's review of a request under California Rules of Court, rule 8.1120(a), and it appearing that the opinion meets the standards for publication under California Rules of Court, rules 8.1105(b) and 8.1110, it is therefore ordered that the opinion be published in the Official Reports with the exception of parts II(B)(4), II(C), and II(D).

_____
Danner, J.


_____
Bamattre-Manoukian, Acting P.J.


_____
Wilson, J.


**H048989**
*People v. Czirban*

2

Trial Court:    County of Monterey

Trial Judge:    Hon. Andrew G. Liu

Counsel:    Mary Jo Strnad, by appointment of the Court of Appeal under the Sixth District Appellate Program, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano, Supervising Deputy Attorney General and Victoria Ratnikova, Deputy Attorney General, for Plaintiff and Respondent.

**H048989**
*People v. Czirban*